2 P.3d 473 (2000)
140 Wash.2d 686
In re the DETENTION OF Donald HENRICKSON, Respondent,
v.
STATE of Washington, Petitioner.
In re the Detention of Michael Allen Halgren, Respondent,
v.
State of Washington, Petitioner.
Nos. 67520-1, 67793-0.
Supreme Court of Washington.
Argued September 23, 1999.
Decided May 18, 2000.
Reconsideration Denied July 20, 2000.
*474 Norm Maleng, King County Prosecutor, David J.W. Hackett, Deputy, Donald J. Porter, Deputy, Seattle, for Petitioner.
Christine Jackson, Shawn Crowley, and David Hirsch, Public Defenders, Seattle, for Respondents.
JOHNSON, J.
The State seeks to commit both Donald Henrickson and Michael Halgren as sexually violent predators under chapter 71.09 RCW. This court has previously held that to commit an individual as a sexually violent predator, due process requires proof of a recent overt act "whenever an individual is not incarcerated at the time the petition is filed." In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993). The Legislature codified this holding by amending the statute to require proof of a recent overt act when a person "has since been released from total confinement," but not when a person "is about to be released from total confinement." Laws of 1995, ch. 216, § 3; RCW 71.09.030.
We are now asked to decide whether chapter 71.09 RCW or due process requires proof of a recent overt act when an individual has, at some point, been previously released into the community but is incarcerated on the day a sexually violent predator petition is filed. We hold no proof of a recent overt act is constitutionally or statutorily required when, on the day the petition is filed, an individual is incarcerated for a sexually violent offense, RCW 71.09.020(6), or an act that by itself would have qualified as a recent overt act, RCW 71.09.020(5). We reverse the decision of the trial court in State v. Halgren, No. 95-1-06725-1 (King County Sup.Ct. Apr. 1, 1996), and affirm the Court of Appeals in Henrickson v. State, 92 Wash.App. 856, 965 P.2d 1126 (1998), although on alternate grounds.

FACTS
Donald Henrickson
Donald A. Henrickson has a long history of sexual assaults on young girls. He was arrested in 1973 for indecent liberties and statutory rape, and again for indecent liberties in 1977. In 1986, Henrickson pleaded guilty to statutory rape in the first degree of a four-year-old girl and was sentenced to 36 months in prison. He was released in 1989. In 1990, Henrickson abducted a six-year-old girl and showed her a pornographic picture; he was convicted of attempted kidnapping in the *475 first degree and communication with a minor for immoral purposes.
The trial court imposed an exceptional sentence of 120 months for the 1990 conviction. Henrickson appealed. The trial court permitted Henrickson to remain free on bond on strict conditions of release during the pendency of his appeal. On appeal, in an unpublished opinion, the Court of Appeals affirmed Henrickson's 1990 conviction but reversed his exceptional sentence. Henrickson, No. 29166-1-I. Henrickson was resentenced to 50 months, with strict conditions of release imposed for one year following release.
During his three-year period of release for the 1990 conviction, Henrickson was required to participate in sexual deviancy treatment. He did not travel anywhere without a chaperone. For a large part of this time, a Department of Corrections officer also supervised Henrickson.
Following his resentencing in 1993 for the 1990 conviction, Henrickson was incarcerated in the Department of Corrections. His scheduled release date was August 30, 1996. On August 29, 1996, one day before his release date, the State filed a petition to have Henrickson committed to the custody of the Department of Social and Health Services as a sexually violent predator. Henrickson stipulated to the commitment, but reserved the right to appeal the trial court's finding that the State need not prove a recent overt act because Henrickson was incarcerated on the day the petition was filed.
The Court of Appeals affirmed Henrickson's commitment. In re Detention of Henrickson, 92 Wash.App. 856, 864, 965 P.2d 1126 (1998). The court held "[b]ecause Henrickson was under constant strict supervision after his arrest for the 1990 kidnapping, due process did not require the State to prove a more recent overt act as a manifestation of his dangerousness." Henrickson, 92 Wash. App. at 864, 965 P.2d 1126. The court tempered its holding, however, with the following analysis:
The fact that an individual is incarcerated on the day the [sexually violent predator] petition is filed is not, by itself, dispositive. The more fundamental question is whether there is evidence of future dangerousness sufficient to overcome the individual's liberty interest. The requirement for proof of a recent overt act as evidence of dangerousness is excused where the individual has been living under a degree of restraint, such as confinement, that minimizes the opportunity to reoffend. If the individual has lived in the community since the most recent offense without committing a further overt act, the trial court should consider the degree to which the period of nonincarceration offered an opportunity to reoffend.
Henrickson, 92 Wash.App. at 863, 965 P.2d 1126 (emphasis added).
The State moved for discretionary review of the Court of Appeals decision. Henrickson cross-petitioned, on the recent overt act issue and other issues.[1] Review was granted solely on the recent overt act issue.

Michael Halgren
Michael Halgren has a history of sexually related offenses, including a 1989 conviction for first degree rape, a 1994 conviction for solicitation of a prostitute, and a 1996 conviction for unlawful imprisonment also involving a prostitute. After his conviction on the unlawful imprisonment charge, Halgren received a 60-month exceptional sentence, which was later reversed by this court. State v. Halgren, 137 Wash.2d 340, 352, 971 P.2d 512 (1999).[2]
*476 Upon this court's reversal of the exceptional sentence, the State anticipated Halgren would be released from confinement "at any time." The State moved to commit Halgren as a sexually violent predator pursuant to chapter 71.09 RCW. Upon motion by the defense, the trial court dismissed the State's petition, relying on the Court of Appeals decision in Henrickson, 92 Wash.App. 856, 965 P.2d 1126. The court held because Halgren had been released into the community for three months pending sentencing on the unlawful imprisonment charge, Henrickson required the State's petition allege a recent overt act by Halgren, which it did not. The State petitioned this court for direct review, which was granted. This court stayed the trial court's order dismissing the State's petition pending review.

ANALYSIS

Proof of a Recent Overt Act Under Chapter 71.09 RCW
The Washington sexually violent predator statute is premised on a finding of the present dangerousness of those subject to commitment. Under the statute, sexually violent predators must suffer from a "mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1) (emphasis added).
The statute's definition of "mental abnormality" is tied directly to present dangerousness. "`Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(2) (emphasis added); see also Young, 122 Wash.2d at 32, 857 P.2d 989 (holding statute applies only to dangerous offenders); In re Personal Restraint ofPaschke, 80 Wash.App. 439, 446, 909 P.2d 1328 (1996); Hubbart v. Superior Court, 19 Cal.4th 1138, 1162, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999) (interpreting identical language in California sexually violent predator statute's definition of mental abnormality to require showing that sexually violent predator is "dangerous at the time of commitment"). The State must prove beyond a reasonable doubt that the individual it seeks to commit is a sexually violent predator consistent with the above definitions. RCW 71.09.060(1).
In order to commit a nonincarcerated individual as a sexually violent predator, the State must also prove beyond a reasonable doubt that the individual has committed a recent overt act evidencing his or her status as a sexually violent predator. RCW 71.09.060(1). As long as the individual is in custody on the day the petition is filed, however, the statute does not require proof of a recent overt act. See RCW 71.09.030(5) (limiting recent overt act requirement to petitions filed against an individual who "has since been released from total confinement"); see also RCW 71.09.020(3).
Here, neither Henrickson nor Halgren had been released from total confinement when their petitions were filed. The State filed its petition against Henrickson on August 29, 1996, one day before his scheduled release. At that time, he had been incarcerated for more than 32 months. A similar scenario occurred in Halgren's case, except Halgren's period of release was significantly shorter than Henrickson's, and Halgren was in custody for more than 35 months after that brief period of release. Consequently, under the plain language of chapter 71.09 RCW, the State need not prove a recent overt act by either Henrickson or Halgren. Periods of temporary release after arrest and prior to extensive confinement do not modify the statute's unambiguous directive that the State need not prove a recent overt act when the subject of a sexually violent predator petition is incarcerated on *477 the day the petition is filed. See, e.g., State v. Riles, 135 Wash.2d 326, 340, 957 P.2d 655 (1998) ("Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation") (citing Cherry v. Municipality of Metro. Seattle, 116 Wash.2d 794, 799, 808 P.2d 746 (1991)).

Proof of a Recent Overt Act Under the Due Process Clause
Respondents argue that even if the statutory recent overt act requirement applies only to those not confined at the time of the petition's filing, the due process clause and our holding in Young mandate proof of a recent overt act when an individual has been released into the community prior to the filing of the petition. Respondents rely upon the Court of Appeals opinion in Henrickson, which interpreted Young to require proof of a recent overt act depending on the nature of the community release. The Henrickson court concluded if "the individual has lived in the community since the most recent offense without committing a further overt act, the trial court should consider the degree to which the period of nonincarceration offered an opportunity to reoffend." Henrickson, 92 Wash.App. at 863, 965 P.2d 1126. While we agree that an opportunity to reoffend should be a factor in the commitment determination, this does not mean proof of a recent overt act during that period of release is constitutionally required.
It is, of course, unquestioned that no person may be deprived of life, liberty, or property without due process of law. Young, 122 Wash.2d at 26, 857 P.2d 989 (citing U.S. Const. amends. 5, 14; Const. art. I, § 3). A person must be both mentally ill and dangerous to be civilly committed consistent with these constitutional guarantees. Young, 122 Wash.2d at 27, 857 P.2d 989 (citing Addmgton v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)); see also Kansas v. Hendricks, 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (citing Heller v. Doe, 509 U.S. 312, 314-15, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); Allen v. Illinois, 478 U.S. 364, 366, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986)). Although chapter 71.09 RCW excuses the State from proof of a recent overt act when a petition is filed against an incarcerated individual, the commitment at issue must still satisfy due process. Young, 122 Wash.2d at 27, 857 P.2d 989.
In Young, we stated that due process requires proof of a recent overt act only when "an individual is not incarcerated at the time the petition is filed." Young, 122 Wash.2d at 41, 857 P.2d 989 (emphasis added). It is true, as respondents point out, that the facts of the present cases were not before us in Young. There, petitioner Cunningham lived in the community for four and one-half months after his release from incarceration but before the State attempted to commit him. Young, 122 Wash.2d at 42, 857 P.2d 989. We found this time period sufficient to require the State to prove a recent overt act and reversed Cunningham's commitment. Young, 122 Wash.2d at 42, 857 P.2d 989. Petitioner Young, on the other hand, for the purpose of the court's analysis, was incarcerated from the date of his 1986 rape conviction until the State's filing of a petition against him, one day before his scheduled release. Young, 122 Wash.2d at 13-14, 857 P.2d 989.[3]
Respondents in the present cases were released into the community after the commission of their most recent offenses. Despite this factual nuance, however, we find our analysis of petitioner Young's case applicable here. When, on the day a sexually violent predator petition is filed, an individual is incarcerated for a sexually violent offense, RCW 71.09.020(6), or for an act that would itself qualify as a recent overt act, RCW 71.09.020(5), due process does not require the State to prove a further overt act occurred *478 between arrest and release from incarceration.
In many cases, sexually violent predators are incarcerated prior to commitment. For incarcerated individuals, a requirement of a recent overt act under the Statute would create a standard which would be impossible to meet. Other jurisdictions have rejected the precise argument made by petitioners because it creates an impossible condition for those currently incarcerated. We agree that "[d]ue process does not require that the absurd be done before a compelling state interest can be vindicated." Indeed, in drafting the Statute, the Legislature expressly noted that the involuntary commitment statute, RCW 71.05, was an inadequate remedy because confinement prevented any overt act. We conclude that where the individual is currently incarcerated no evidence of a recent overt act is required.
Young, 122 Wash.2d at 41, 857 P.2d 989 (emphasis added) (citations omitted).
Here, although respondent Henrickson did spend approximately three years in the community under heavily supervised conditions of release, he was incarcerated from December 10, 1993 until August 30, 1996; the petition was filed against him one day before his release. Henrickson's incarceration stemmed from convictions for attempted kidnapping in the first degree and communication with a minor for immoral purposes. These convictions would certainly qualify as either a sexually violent offense or a recent overt act. RCW 71.09.020(6)(c)-(d); RCW 71.09.020(5). Likewise, respondent Halgren was released for three months pending sentencing, but was incarcerated for three years before the State filed a petition against him. His conviction, based on a charge of unlawful imprisonment, would also qualify as a sexually violent offense or a recent overt act. RCW 71.09.020(6)(c); RCW 71.09.020(5).
To follow the Court of Appeals approach in Henrickson would elevate Henrickson's and Halgren's periods of temporary release during the disposition of their criminal cases over the sexually related criminal acts that actually gave rise to their extensive periods of confinement. This would lead to absurd results because, in effect, any post-arrest supervised release for whatever reason would provide the opportunity to circumvent the distinctions of the statute. "`[D]ue process does not require that the absurd be done before a compelling state interest can be vindicated.'" Young, 122 Wash.2d at 41, 857 P.2d 989 (quoting People v. Martin, 107 Cal. App.3d 714, 725, 165 Cal.Rptr. 773 (1980)).
The Court of Appeals has addressed facts similar to those now before us and has reached the same result. In re Detention of Aqui 84 Wash.App. 88, 929 P.2d 436 (1996). There, a petition to commit Aqui as a sexually violent predator was filed while he was incarcerated. However, the trial court found chapter 71.09 RCW unconstitutional and ordered Aqui's release. Aqui, 84 Wash.App. at 96, 929 P.2d 436. This court stayed the release order and later reversed the trial court. Aqui, 84 Wash.App. at 97, 929 P.2d 436. The end result was that Aqui was released into the community for three weeks, then returned to custody. Aqui argued "because he was released, the State had the same opportunity to prove a recent overt act as if he had been out of custody when the petition was filed and thus was required to do so." Aqui, 84 Wash.App. at 96, 929 P.2d 436. The Court of Appeals disagreed, although it did not foreclose the validity of this argument in future cases:
We restrict our holding to the peculiar facts presented in this case. Thus, we reject the State's argument that it was excused from proving a recent overt act solely because of the brevity of Aqui's release. Due process requires the State to prove a recent overt act if a person is released to the community before the petition is filed. On these unique facts we need not reach the question of whether due process requires an overt act when the petition is filed before release but it is not acted upon in a timely manner such that a person does spend a significant amount of time released to the community.
Aqui, 84 Wash.App. at 97, 929 P.2d 436 (footnote omitted) (citing Young, 122 Wash.2d at 41, 857 P.2d 989).
To the extent Aqui suggests due process requires proof of a recent overt act when, at *479 the time the petition is filed, an individual is incarcerated for a sexually violent offense or an act that would itself have qualified as a recent overt act, it is inconsistent with our holding in Young. This is not to say an individual's activities during periods of community release may not be highly relevant to a determination of whether he or she meets the statutory definition of a sexually violent predator. See RCW 71.09.020(1). Indeed, the recency of the acts upon which the State bases its commitment petition may be a significant factor in determining whether the individual is presently dangerous as required by both the statute and due process. RCW 71.09.020(2); Young, 122 Wash.2d at 31-32, 857 P.2d 989. We simply hold that when, at the time the petition is filed, an individual is incarcerated for a sexually violent offense, or for an act that itself would have constituted a recent overt act, due process does not require the State to prove a further overt act occurred between arrest and release from incarceration,

CONCLUSION
Donald Henrickson and Michael Halgren were both incarcerated for crimes that would qualify under the sexually violent predator statute, chapter 71.09 RCW, as sexually violent offenses or, at the time they occurred, as recent overt acts. Neither due process nor the statute require the State to prove a further overt act occurred between arrest and release from incarceration for these crimes. The decision of the trial court in Halgren is reversed. The result reached by the Court of Appeals in Henrickson is affirmed.
GUY, C.J., SMITH, MADSEN, ALEXANDER, TALMADGE, IRELAND, JJ., and SHIELDS, J.P.T., concur.
SANDERS, J. (dissenting).
We have previously held "proof of a recent overt act is necessary to satisfy due process concerns when an individual has been released into the community." In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993) (citing In re Harris, 98 Wash.2d 276, 284, 654 P.2d 109 (1982)). To embody this constitutional requirement the Washington State Legislature subsequently amended the statute at issue to require proof of a recent overt act as a precondition to incarcerating "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement...." RCW 71.09.030. Unfortunately, the majority reduces this overt act requirement to a meaningless inquiry into the physical location of an individual on the day a sexually violent predator petition is filed. Moreover the majority reaches out to make its point in a case not even subject to our jurisdiction.

No Jurisdiction
In August 1996 Henrickson sought, and was denied, discretionary review in this court to contest the sufficiency of the sex predator petition filed against him because the petition did not allege a recent overt act. Thereafter he was committed as a sexually violent predator on a stipulation preserving his right to raise the "recent overt act" issue on appeal, which was heard in October 1998. The Court of Appeals affirmed Henrickson's commitment notwithstanding his arguments. However, in reaching its conclusion the Court of Appeals reasoned that excusing the State from alleging and proving a recent overt act required more than a simplistic showing that an individual is incarcerated on the day the petition was filed. Henrickson v. State, 92 Wash.App. 856, 863, 965 P.2d 1126 (1998).
Although the State had won the appeal, it objected to the reasoning of the Court of Appeals and sought' review to contest the appellate court's theory. Henrickson did not file his own petition for review, or a crosspetition, but did file an answer, wherein Henrickson opposed the State's petition for review and alternatively requested review of the recent overt act issueshould review be granted on the State's petition. See Answer to State's Pet. for Review at 8 ("Mr. Henrickson opposes the State's petition for review for the reasons stated below. In the event this Court accepts review, Mr. Henrickson asks the Court to review the issues presented herein.").
*480 The State's petition, however, cannot merit review as a matter of law because the State lacks standing to seek review of an opinion which ultimately held in its favor. Because the State "merely objects to the reasoning by which" the Court of Appeals reached its result, City of Tacoma v. Taxpayers, 108 Wash.2d 679, 685, 743 P.2d 793 (1987), it "cannot be considered `aggrieved', and therefore does not have standing to appeal." Id.; see RAP 3.1. However citing Taxpayers at page 685, 743 P.2d 793, the majority states we properly accepted review "because Henrickson cross-petitioned for review of the same issue...." Majority at 475 n. 1. I disagree.
RAP 2.4(a) permits an appellate court to grant a respondent affirmative relief only if the respondent also seeks review of the decision by the timely filing of a notice for discretionary review. And RAP 13.4(a) requires a petition for review to be filed within 30 days of the decision terminating review. Henrickson did not request affirmative relief but merely asked this court to deny review and uphold the decision of the Court of Appeals. See Answer to State's Pet. for Review at 20. Further, Henrickson filed his answer to the State's petition for review long after the deadline had lapsed for filing an initial petition. As the State lacked standing to seek review and Henrickson did not seek review, it necessarily follows that we are without jurisdiction to act in this case. RAP 13.6 ("Supreme Court accepts discretionary review of a decision of the Court of Appeals by granting ... a petition for review.").[1]

Due ProcessRecent Overt Act Requirement
The Washington sexually violent predator statute empowers a prosecuting attorney to file a petition alleging that a person is a "[s]exually violent predator" when such an individual has been convicted of or charged with a crime of sexual violence and suffers from "a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1) (emphasis added). The statute defines "[m]ental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(2) (emphasis added). This connection between mental illness and dangerousness has led to the following observation:
Necessarily one who simply commits a violent sexual act through volitional choice is outside the statute. Such an individual is what the criminal law is made for. But in theory the person who does this because his "mental abnormality" or "personality disorder" "makes" him do it is not a person acting by his free will and, consequently, not one who can be held accountable for his choices.
Therefore evidence is necessary to distinguish between those who volitionally act of their free will and those who don't.
In re Detention of Campbell, 139 Wash.2d 341, 373, 986 P.2d 771 (1999) (Sanders, J., dissenting). Consistent with this principle, our previous cases have required evidence of dangerousness as the result of a mental disorder to justify the "massive curtailment of liberty," Humphrey v. Cody, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), inherent in an involuntary commitment.
In re Harris, 98 Wash.2d 276, 654 P.2d 109 (1982) examined whether proof of a recent overt act was required to provide a constitutional basis for involuntary detention in the more usual civil commitment context. Assuming dangerousness may in fact provide a basis for detention, we noted many courts *481 recognize the due process clause of the Fourteenth Amendment to the United States Constitution requires proof of a recent overt act to constitutionally support a finding of dangerousness. Id. at 284, 654 P.2d 109 (citing Suzuki v. Alba, 438 F.Supp. 1106, 1110 (D.Haw.1977), aff'd in part, dismissed in part, rev'd in part sub nom. Suzuki v. Yuen, 617 F.2d 173, 178 (9th Cir.1980); Stamus v. Leonhardt, 414 F.Supp. 439, 451 (S.D.Iowa 1976); Lynch v. Baxley, 386 F.Supp. 378, 391 (M.D.Ala.1974), superseded by state statute as stated in Webster v. Bartlett, 709 So.2d 1226 (Ala.Civ.App.1997); Lessard v. Schmidt, 349 F.Supp. 1078, 1093 (E.D.Wis.1972), vacated on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974)). Adopting the logic of these federal cases we thus held "a showing of a substantial risk of physical harm as evidenced by a recent overt act" is necessary to comport with substantive due process. In re Harris, 98 Wash.2d at 284, 654 P.2d 109.
In Young, we again addressed the contention that due process requires evidence of a recent overt act to prove dangerousness. We noted that because sexually violent predators are often incarcerated prior to commitment, a recent overt act requirement under such circumstances "would be impossible to meet."[2]In re Personal Restraint of Young, 122 Wash.2d at 41, 857 P.2d 989.
Other jurisdictions have rejected the precise argument made by petitioners because it creates an impossible condition for those currently incarcerated. We agree that "[d]ue process does not require that the absurd be done before a compelling state interest can be vindicated." Indeed, in drafting the Statute, the Legislature expressly noted that the involuntary commitment statute, RCW 71.05, was an inadequate remedy because confinement prevented any overt act. We conclude that where the individual is currently incarcerated no evidence of a recent overt act is required.
Id. (citations omitted) (emphasis added) (quoting People v. Martin, 107 Cal.App.3d 714, 725, 165 Cal.Rptr. 773 (1980)).
After Young, the Washington State Legislature, amended the sexually violent predator act to include a recent overt act statutory requirement. RCW 71.09.020(5) was amended to define a "[r]ecent overt act" as "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm." And RCW 71.09.030 was amended to require the State to allege and prove a recent overt act before incarcerating "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement...." Both Henrickson and Halgren fall within the literal scope of this statutory requirement because each was released from total confinement after their conviction of a sexually violent offense. Notwithstanding, the State is unwilling or unable to allege, much less prove, the commission of an overt act during that period of release from total confinement. This failure of proof raises the horrendous specter that these men are not "sexual predators" as that term is defined by the act but are nevertheless imprisoned after the payment of their debt to *482 society as measured by completion of a maximum term in prison.[3]
Here both Henrickson and Halgren were released from confinement and lived in the community for a significant period of time prior to the filing of the commitment petitions, thus not only providing the State "the opportunity to prove dangerousness through evidence of a recent overt act," but also bringing them literally within the statutory mandate, which requires a recent overt act to be alleged and proved. In fact, Henrickson remained in the community from April 1990 until he was resentenced for the 1990 offense in December 1993 absent any overt act of sexual misconduct. During this same period Henrickson successfully completed over three years of community-based sex offender treatment. Henrickson was then reincarcerated from December 1993 until August 29, 1996a period of time significantly shorter than the three years and eight months he spent incident-free in the community.
Similarly, Halgren spent three months in the community pending sentencing on a 1996 conviction for unlawful imprisonment, a nonsexual offense. See infra note 5. Finding that Halgren had the opportunity to reoffend, and further finding that the State failed to meet its threshold duty to show a recent overt act during that period, the trial court properly dismissed the sexual predator petition and ordered his release. The State, however, moved to stay his release, not because he probably would reoffend but because he probably would noti.e., the State resisted release because it feared it would be then required to prove a recent overt act. Emergency Mot. for Stay & Expedited Briefing Schedule at 28, In re Detention of Halgren, No. 67793-0 (Wash. Supreme Ct. Mar. 23, 1999) (sealed). Although a majority of this court agreed to stay the release, I dissented based on the absurdity of denying a man his liberty due to the fear he would not reoffend.
The reasoning of Young is clear: the State is excused from the constitutional requirement of proving a recent overt act only when such requirement would be "absurd" due to an individual's lack of opportunity to reoffend while incarcerated. However there is nothing "absurd" about requiring proof of an overt act when an individualsuch as Henrickson or Halgrenhas spent extensive time in the community with ample opportunity to reoffend subsequent to his predicate sex offense. Simply put, that Henrickson and Halgren were incarcerated on the same day as the sex predator petitions were actually filed should not logically affect the requirement to prove an overt act when they were free in the community and not incarcerated.
*483 What is absurd, I proffer, is the majority's selective emphasis on dicta[4] from Young taken completely out of a dissimilar factual context, to further the majority's desired outcome, which robs the constitutional requirement of its reason. See Majority at 477-478.
We have previously expressed dissatisfaction with bright-line rules in the context of due process.
"`[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, `due process' cannot be imprisoned within the treacherous limits of any formula."
In re Disciplinary Proceeding against Denting, 108 Wash.2d 82, 97, 736 P.2d 639, 744 P.2d 340 (1987) (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). Nevertheless, the majority reduces an individual's due process constitutional guarantee to a formulaic inquiry into the individual's physical location on the day the petition is filed. The Court of Appeals has recently opined it does "not believe that the due process protection mandated by Young is so tenuous." In re Detention of Albrecht, 98 Wash.App. 426, 433, 989 P.2d 1204 (1999). Neither do I.
Two separate divisions of our Court of Appeals have rejected this arbitrary bright-line rule. In the instant case, Division One correctly noted: "The fact that an individual is incarcerated on the day the petition is filed is not, by itself, dispositive. The more fundamental question is whether there is evidence of future dangerousness sufficient to overcome the individual's liberty interest." Henrickson, 92 Wash.App. at 863, 965 P.2d 1126. More recently, Division Three unequivocally rejected the argument that the State need not allege and prove a recent overt act if the alleged predator is incarcerated at the time the petition is filed. "Once a person has been released from total confinement and placed in the community subject to the conditions of community custody, he or she may be the subject of a sexual predator petition only if the State alleges a recent overt act." Albrecht, 98 Wash.App. at 436,989 P.2d 1204. See also In re Detention of Aqui, 84 Wash. App. 88, 97, 929 P.2d 436 (1996) ("Due process requires the State to prove a recent overt act if a person is released to the community before the petition is filed."). The dissent in Young also recognized the absurdity of Young's dicta, if read literally:
By reading in this new requirement, the court creates two classes of persons under the same statute: those incarcerated versus those who are not. This is a distinction without a difference. Immediately upon release, an individual must now commit an overt act to be incarcerated under the Statute, whereas the day before release, the same individual could be committed without proof of an overt act. This new distinction is arbitrary, violating even a rational basis review.
Young, 122 Wash.2d at 66-67, 857 P.2d 989 (Johnson, J., dissenting).
*484 The practical effect of the majority's retreat from reason is demonstrated as follows: An individual may be released from confinement and lawfully reside in the community for a number of years, but if he is incarcerated on the day the State files its sexually violent predator petition, such individual may spend the rest of his life confined as a sexually violent predator without necessity to show an overt act to justify a finding of continued dangerousness.
In Albrecht, the Court of Appeals illustrated the dangerousness of the majority's position with the following hypothetical:
What if he had been living in the community under supervision for almost two years but was serving five days in jail for a DUI [driving under the influence] or some other minor community supervision violation? If the State had filed its petition on the day that he was incarcerated, would it be relieved of alleging and proving a recent overt act? We do not believe that the due process protection mandated by Young is so tenuous. If so, what would prevent the State from always initially proceeding with an allegation of a community supervision violation? For a person with a history of sex offenses, the conduct that the State believes constitutes a "recent overt act" would also likely be a violation of community supervision. The alleged predator could be incarcerated for the community supervision violation based upon proof of that conduct by a preponderance of the evidence. Once incarcerated, the State could file a sexually violent predator petition and be relieved of its obligation to allege and to prove a recent overt act by proof beyond a reasonable doubt.
Albrecht, 98 Wash.App. at 433, 989 P.2d 1204 (emphasis added). Thus, if an individual violated a mandatory term of community placement such as possessing a controlled substance or failing to remain within a specified geographic boundary, see RCW 9.94A.120, he could be reincarcerated. See RCW 9.94A.200(3); RCW 9.94A.207. Under the majority's unprecedented rule, such incarceration would arguably "stem" from the underlying sex offense because such offense is not discharged until all sentencing conditions have been met. See RCW 9.94A.220. Accordingly, the majority circumvents due process and relieves the State from proving a recent overt act in circumstances where an individual is incarcerated for an offense wholly unrelated to the allegations in the commitment petition.[5]
The consequence of all this is the mere fact of incarceration at the moment a petition is filed, as the majority now holds, allows the State to dispense with the constitutional requirement of showing an overt act to prove its case.
Not surprisingly, the majority fails to explain why, if the State has the duty to prove dangerousness through evidence of an overt act, at least as recent as the last opportunity available to the accused, imposing such a requirement "would create a standard which would be impossible to meet," Young, 122 Wash.2d at 41, 857 P.2d 989unless it means to say the standard "would be impossible to meet" for someone who is not a sex predator. The majority simply offers the following as its sole justification:
To follow the Court of Appeals approach in Henrickson would elevate Henrickson's and Halgren's periods of temporary release during the disposition of their criminal *485 cases over the sexually related criminal acts that actually gave rise to their extensive periods of confinement. This would lead to absurd results because, in effect, any post-arrest supervised release for whatever reason would provide the opportunity to circumvent the distinctions of the statute.
Majority at 478. The majority's rationale overlooks the essential inquiry mandated by Youngwhether the State has the opportunity to prove continued dangerousness through evidence of a recent overt act and demonstrates an irrational fear that allowing individuals such as Henrickson and Halgren to enforce their constitutional right to due process will result in some sort of miscarriage of justice. Majority at 478.
The majority's rationale disregards the theoretical purpose of the sex predator statutetreatment and incapacitation of those who are supposedly chronically incapable of controlling their behavior. An individual suffering from a "mental abnormality" which "makes" him reoffend by definition cannot control his or her behavior because the abnormality or personality disorder "predisposes the person to the commission of criminal sexual acts...." RCW 71.09.020(2) (emphasis added). It is this deep-seated lack of control which makes a "sex predator" what the legislature says he is, and sufficiently dangerous to constitutionally justify indefinite confinement following the expiration of a criminal sentence. It necessarily follows that a "bona fide" sex predator willfrom the moment he is released from incarceration commit or attempt to commit criminal sexual acts due to his nonvolitional predisposition. Thus, requiring the State to prove an overt act under such circumstances is absolutely necessary yet not sufficient to demonstrate the existence of the condition which subjects the individual to imprisonment under this statute.
Although both Henrickson and Halgren were released from confinement and lived in the community for a significant period of time, the majority disregards these periods of release and maintains their most recent convictions constitute either a sexually violent offense, RCW 71.09.020(6), or a recent overt act, RCW 71.09.020(5). Majority at 478. This illogical approach ignores the legislative intent of RCW 71.09.030, enacted to require the State to meet an additional burden of proof when an individual is released to the community prior to commitment proceedings, and allows any act to constitute a "recent" overt act, thus robbing the requirement of an essential elementrrecency. The absence of a recent overt act, when an individual has the opportunity to reoffend as is the case here, is extremely meaningful because it demonstrates the accused individual does not exhibit the uncontrollable, predisposing, dangerous mental state of the sex predator, which in theory under the statute must have persisted since at least the time of the last violent sex crime committed by the accused.
Recall that proof of the conviction of the predicate sex crime is generally a prima facie element of the State's proof. RCW 71.09.030, .060. If the State is excused from its duty to establish an individual's continued dangerousness through proof of an overt act that is at least as recent as the last opportunity for reoffense, the following fears will be realized:
[B]y authorizing the indefinite confinement in mental facilities of persons who are not mentally ill, the Statute threatens not only the liberty of certain sex offenders, but the liberty of us all. By committing individuals based solely on perceived dangerousness, the Statute in effect sets up an Orwellian "dangerousness court," a technique of social control fundamentally incompatible with our system of ordered liberty guaranteed by the constitution....
Young, 122 Wash.2d at 60, 857 P.2d 989 (Johnson, J., dissenting).
But our newly enlightened majority reasons that requiring proof of an overt act during a period of release, regardless of the length of release, is "absurd" if an individual spends subsequent time in prison, regardless of the length of subsequent incarceration. Majority at 478. Not so. This assumes a transitory mental state inconsistent with the legislative finding that the alleged condition is "very long term." RCW 71.09.010. Moreover, by disregarding this legislative finding, *486 the majority fails to acknowledge the legislative distinction between standard civil commitments and the sex predator commitment scheme:
Standard civil commitments are usually triggered by relatively recent acts of violence or threatening behavior. The issue for prediction is whether the individual will be violent in the relatively short term. On the other hand, sex offender commitment predictions are likely to be based on violence that is quite remote, occurring often years or decades before the commitment proceedings. This is because sex offender commitments are aimed at sex offenders who have been in prison serving lengthy sentences for the same past behavior. In addition, sex offender commitment statutes appear to be aimed at long term, rather than short term, predictions.
Erie S. Janus, Preventing Sexual Violence: Setting Principled Constitutional Boundaries on Sex Offender Commitments, 72 Ind. L.J. 157, 200-01 (1996) (emphasis added). Thus, although we have rightly held evidence of dangerousness "must be recent to be meaningful," Harris, 98 Wash.2d at 284, 654 P.2d 109, this does not mean the absence of a remote overt act is meaningless in the sexual predator context. Far from it.
Washington courts have previously held "in considering whether an overt act, evidencing dangerousness, satisfies the recentness requirement, it is appropriate to consider the time span in the context of all the surrounding relevant circumstances." In re Detention of Pugh, 68 Wash.App. 687, 695, 845 P.2d 1034 (1993). If an individual has spent time in the community following his most recent sex offense, at minimum, due process and the statute require the State to prove an overt act during that period of release before the individual may be committed for the rest of his life. If he truly is a sex predator, an overt act during this most recent period of release will be there. But if it is not there, the State's proof fails to cross the most minimal threshold of reliability which our constitutional process requires because, in theory, a sex predator is one who will inevitably reoffend and be unable to volitionally control his supposed predisposition.[6] And we are imprisoning men outside the criminal process who do not meet the statutory criteria for "civil" imprisonment.

Conclusion
An individual's liberty interest is fundamental in nature. "As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference ... freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution." Foucha v. Louisiana, 504 U.S. 71, 90, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (Kennedy, J., dissenting). The protection of liberty from erroneous deprivations thereof should be our primary concern in "civil" imprisonment cases. But our majority refuses to protect the liberty of individuals like Henrickson and Halgren, arbitrarily disregarding their statutory and constitutional rights, because they happened to be in prison on the day the sex predator petitions were filed.
Accordingly, I dissent.
NOTES
[1] We note the State may not seek review of a decision in its favor merely because it disputes the reasoning of that decision. See City of Tacoma v. Taxpayers of Tacoma, 108 Wash.2d 679, 685, 743 P.2d 793 (1987); RAP 3.1. Nevertheless, because Henrickson cross-petitioned for review of the same issue, the matter is properly before this court. Taxpayers, 108 Wash.2d at 685, 743 P.2d 793. Even were this not the case, the same issues are properly before this court in Halgren's present case. Our disposition of that case alone would have the exact same legal and factual consequences as our disposition of both cases.
[2] The Halgren opinion contains the full factual background of the unlawful imprisonment case. Halgren, 137 Wash.2d at 342-45, 971 P.2d 512. We note that although unlawful imprisonment is considered a nonsexual offense under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the same is not the case under the sexually violent predator statute, chapter 71.09 RCW. The statute specifically lists unlawful imprisonment as a crime that may qualify as a predicate "sexually violent offense." RCW 71.09.020(6)(c). Furthermore, the offense need not have been determined at the time of conviction to be sexually motivated, so long as it is so proven at the time of commitment. RCW 71.09.020(6)(c).
[3] The State, citing trial court records from Young's 1986 rape conviction, suggests Young was free on conditions of release from the date of his arrest in February 1986 until his conviction in August 1986. This court may not take judicial notice of records from a different proceeding to establish the truth of the matters contained therein. See Swak v. Department of Labor & Indus., 40 Wash.2d 51, 54, 240 P.2d 560 (1952); 5 Karl B. Tegland, Washington Practice: Evidence § 46 (3d ed. 1989 & Supp.1998-1999). Even if this court were inclined to take judicial notice, there is no indication this issue was ever raised before this court in Young.
[1] Despite the unavailability of either direct or discretionary review, we may, in unusual circumstances, exercise our inherent power of review to determine whether a trial court's decision is arbitrary, capricious, or contrary to law. Kreidler v. Eikenberry, 111 Wash.2d 828, 837, 766 P.2d 438 (1989). But here, we granted the State's petition for discretionary review without invoking our inherent power of review. See Order Granting Review, In re Detention of Henrickson, No. 67520-1 (Wash. Supreme Ct. May 10, 1999). Further, it cannot be said that discretionary review was "unavailable"; rather, review was simply improperly sought by the State as it was not "aggrieved."
[2] Standing alone, this proposition is doubtful. Several studies indicate a high rate of sexual coercion among incarcerated prisoners. See Cindy Struckman-Johnson et al., Sexual Coercion Reported by Men and Women in Prison, 33 J. Sex Res. 67, 67 (1996) (anonymous survey of prisoners revealed 20 percent had been forced or pressured to have sexual contact against their will while incarcerated); id. at 68 (citing Wayne S. Wooden & Jay Parker, Men Behind Bars: Sexual Exploitation in Prison (Plenum Press 1982) for the finding that 14 percent of a randomly selected sample of 200 inmates reported being pressured into having sex against their will). Others have correctly observed that prisoners serving prison terms can demonstrate violent or sexually explicit conduct even while in prison. See John Q. LaFond, Washington's Sexually Violent Predators Statute: Law or Lottery? A Response to Professor Brooks, 15 U. Puget Sound L.Rev. 755, 771 (1992) (evidence such as planning sex crimes or sexually violent fantasies constitutes tangible proof of an inmate's current dangerousness); In re Personal Restraint of Young, 122 Wash.2d 1, 67, 857 P.2d 989 (1993) (Johnson, J., dissenting) ("Evidence amounting to a `recent overt act' is often present even while in jail. Such evidence could be based on prison activities or conduct, such as inappropriate drawings of sexual encounters with children."). Thus, Young's conclusion that prisoners cannot possibly demonstrate an overt act while incarcerated is questionable at best.
[3] RCW 71.09.060(1) does not change this analysis. That statute provides in part: "If, on the date that the petition is filed, the person was living in the community after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a recent overt act...." The statute thus affirmatively requires proof of a recent overt act when a person is not incarcerated on the day the sex predator petition is filed but does not dispense with the requirement when he is incarcerated. Beyond the plain language of the statute, there are several reasons why a contrary inference would be improper: (1) It would unnecessarily create a statutory conflict between RCW 71.09.030 and .060, whereas it is our duty to avoid creating such a conflict when practical, Titnberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 314, 884 P.2d 920 (1994); (2) statutes curtailing civil liberties should be strictly construed so as not to expand their scope beyond that minimally required by the language itself, In re Detention of J.R., 80 Wash.App. 947, 956, 912 P.2d 1062 (1996); In re Detention of Swanson, 115 Wash.2d 21, 31, 804 P.2d 1 (1990); Dunner v. McLaughlin, 100 Wash.2d 832, 850, 676 P.2d 444 (1984); In re Cross, 99 Wash.2d 373, 379, 662 P.2d 828 (1983); and (3) statutes should be construed in a constitutional fashion when possible. Id. at 382-83, 662 P.2d 828. As the Court of Appeals recently recognized:

RCW 71.09.030 must be consistent with RCW 71.09.060. It makes no sense for RCW 71.09.030, the statute that specifies the requirements for filing a sexual predator petition, to be in conflict with RCW 71.09.060, the statute that establishes the requirements for proof. And, RCW 71.09.060 makes the distinction mandated by Harris and Young not by referring to persons who are "released from total confinement" but by referring to persons who are "living in the community after release from custody." These terms must be analyzed in relationship to one another and, if possible, harmonized to ensure proper construction of each provision.
In re Detention of Albrecht, 98 Wash.App. 426, 434, 989 P.2d 1204 (1999) (citation omitted).
[4] The word "dicta" means observations or remarks made in pronouncing an opinion concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination. State ex rel. Lemon v. Langlie, 45 Wash.2d 82, 89, 273 P.2d 464 (1954). Statements that constitute "obiter dictum" need not be followed. DCR, Inc. v. Pierce County, 92 Wash.App. 660, 683, 964 P.2d 380 (1998), review denied, 137 Wash.2d 1030, 980 P.2d 1283 (1999), cert. denied, ___ U.S. ___, 120 S.Ct. 1553, 146 L.Ed.2d 459 (1999). In Young we stated: "We conclude that where the individual is currently incarcerated no evidence of a recent overt act is required." In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993). This statement goes well beyond the legal principle necessary to decide Young because the petitioner there was continuously incarcerated from the date of his most recent conviction until the filing of the sex predator petition. Id. at 13-14, 857 P.2d 989. Although the factual situation presently before us was not contemplated by the Young court, the majority nevertheless relies on the expansive dicta in Young, without regard to the extensive time Henrickson and Halgren spent in the community following commission of their predicate offensesa mere "factual nuance" according to the majority. Majority at 478.
[5] This is precisely Halgren's case. Halgren was serving time for unlawful imprisonment, a nonsexual offense under the Sentencing Reform Act of 1981 (RCW 9.94A), when the State filed its sexually violent predator petition. Although the majority refers to Halgren's "history of sexually related offenses, including ... a 1996 conviction for unlawful imprisonment" involving a prostitute, majority at 5, this statement does not reference a "sexually violent offense" as that term is defined in RCW 71.09.020(6). Although unlawful imprisonment may qualify as a predicate "sexually violent offense" if proved to be sexually motivated beyond a reasonable doubt at the time of conviction or commitment, RCW 71.09.020(6)(c), the State has yet to convince a panel of jurors Halgren's conviction for unlawful imprisonment was sexually motivated. See State v. Halgren, 137 Wash.2d 340, 971 P.2d 512 (1999) (holding because the prosecution chose not to file a special allegation of sexual motivation, which requires proof beyond a reasonable doubt, the State was not allowed to seek an exceptional sentence based upon the alleged sexual nature of Halgren's crime).
[6] "In the dark heart of the sex predator statute is the legislative denial of free will and individual responsibility." In re Detention of Campbell, 139 Wash.2d 341, 373, 986 P.2d 771 (1999) (Sanders, J., dissenting).