**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Detention of:<br><br>C.A.,<br><br>                                               Appellant. | No. 60091-9-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – CA appeals the trial court's order extending his involuntary civil commitment for an additional 90 days in a less restrictive alternative (LRA), which was based on a jury finding that he was gravely disabled as defined in RCW 71.05.020(25)(b). He argues that substantial evidence does not support the jury's gravely disabled finding.

We hold that the evidence is sufficient to establish that CA was gravely disabled under RCW 71.05.020(25)(b). Therefore, we affirm the trial court's involuntary commitment order.

FACTS

*Background*

In July 2023, law enforcement officers found CA lying on the ground in a store parking lot. CA was disheveled, smelled of alcohol, and had dried feces on his clothing. After identifying himself and requesting medical attention, CA became aggressive and punched one of the responding medical personnel. CA was arrested and charged with third degree assault.

CA later was found to lack the capacity to stand trial, and his charges were dismissed without prejudice. He was referred for a civil commitment evaluation at Western State Hospital.

CA's treatment providers (the petitioners) filed a petition and amended petition seeking to extend CA's involuntary treatment for an additional 180 days. In these petitions, the providers alleged that CA was at a substantial risk of engaging in criminal acts similar to his previous offense due to his psychiatric symptoms, and that he was not ready for an LRA.

In August, after CA showed improvement, the petitioners filed a second amended petition. In this petition, they asserted that further involuntary treatment was needed because CA was gravely disabled, but that CA was ready for an LRA.

*Trial Testimony*

At trial, the petitioners presented testimony from clinical psychologist Joscelyn Rompogren and psychiatric nurse practitioner Chidimma Okoye. CA did not present any witnesses.

Rompogren and Okoye testified that CA had a behavioral health disorder, specifically unspecified schizophrenia spectrum and other psychotic disorders and an alcohol use disorder that was currently in remission because he was in a hospital environment. When CA first was admitted to Western State Hospital, his talking was very disorganized and he made nonsensical statements. He stated that he believed that he was a trained assassin for the military, and he made threats to kill anyone who got in his way.

By the time of the trial, CA's thoughts were less disordered, and he could now engage in more linear conversation. But he still had delusional beliefs about being absent without leave from the Navy. He believed that he was a firefighter on the Abraham Lincoln and that he would

be in trouble when he left the hospital. And he still had a delusion about being a trained assassin, but the delusion was not so aggressive.

Both Rompogren and Okoye testified that CA had a history of being hospitalized, discharged, decompensating after failing to continue his treatment, and then being rehospitalized after incurring criminal charges. This was his fourth admission Western State Hospital.

After CA's first three admissions, which were all for competency evaluations or restoration, he was discharged to the jail and then released into the community without mental health support in place. After being discharged, CA would quickly decompensate and be returned to the hospital. In one instance, he was back at the hospital within a few months of his release. Rompogren stated, "When [CA] is not in treatment, based on the records, when he's in the community, his volitional control is impaired and he does become more agitated and prone to acting on aggressive impulses." Rep. of Proc. (RP) at 201.

During the current admission, CA initially refused his medication, and an involuntary medication order was issued. By the time of the trial, CA was voluntarily taking his medication. However, during a recent interview, he was unaware of what medications he was taking.

Rompogren and Okoye also testified that CA previously had stated that he would not continue to take his medication when released because he did not believe that he had a mental illness and that the medication was unnecessary. More recently, CA stated that he would continue taking his medication despite not believing that it was beneficial to him if taking his medication would keep him out of jail. Okoye testified that this statement was not credible considering CA's prior failures to comply with his medication once he was released.

Although CA currently was taking his medication and would meet with members of his treatment team, he refused to participate in treatment groups because he had been at Western

3

State Hospital several times and did not see any value in attending them. Rompogren opined that CA's refusal to attend these sessions was due to his belief that he did not have a mental illness. Although participation in treatment groups was not required, Rompogren testified that CA's inability to recognize his need for medication and treatment suggested that he would not follow through with mental health services if discharged. She also stated that it was unclear if CA was able to engage in goal-oriented behavior or participate in aspects of living and that at this time his judgment and perception of reality were impaired due to his behavioral health disorder.

Rompogren further opined that if CA were to be discharged that day, he would not be able to consistently ensure that his basic health and safety needs were met. Both witnesses believed CA would not seek out, obtain, or maintain his medication or mental health treatment and that he would quickly decompensate. And without ongoing treatment, CA's volitional control would be impaired, and he would become more agitated and prone to act on aggressive impulses.

Both Rompogren and Okoye concluded that CA was gravely disabled as a result of his behavioral health disorder. They agreed that he manifested severe deterioration in routine functioning, evidenced by repeated and escalating loss of cognitive or volitional control over his actions, and that he would not receive care essential for his health or safety if discharged. But both witnesses also testified that CA had improved sufficiently to be placed on the active discharge list and that they were seeking an appropriate placement opportunity for him where he could receive the support necessary for him to continue with his medication, appointments, and treatment from on-site staff. Rompogren opined that a structured, supervised setting would be the most beneficial for CA when he left the hospital.

*Verdict*

The jury found that CA had a behavioral health disorder and that he was gravely disabled as a result of that disorder. The jury also found that an LRA was in CA's and others' best interest.

The trial court entered an order extending CA's involuntary treatment in an LRA for up to 90 days. CA appeals the trial court's involuntary commitment order.

ANALYSIS

A. LEGAL PRINCIPLES

RCW 71.05.320(4) provides that after an initial involuntary commitment period, the professional person in charge of the facility in which a person is committed may file a new petition for involuntary treatment on various grounds. Relevant here, the petitioner can file a new petition based on the ground that the respondent continues to be gravely disabled. RCW 71.05.320(4)(d).

The term "gravely disabled" is defined as:

> a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25). In its closing argument, the petitioners advised the jury that they were seeking commitment only under the second definition of gravely disabled.

When a petitioner seeks to prove that a person is gravely disabled under RCW 71.05.020(25)(b), they must show (1) "recent proof of significant loss of cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for [their] health or safety." *In re Det. of LaBelle*,

107 Wn.2d 196, 208, 728 P.2d 138 (1986). The second requirement may include a showing that "the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id*. (emphasis omitted).

Subsection (b) of this statute enables the State to provide the kind of continuous care and treatment that can break "revolving door syndrome," a cycle in which patients repeatedly move from hospitalization to insecure situations, relapse, and then are rehospitalized. *Id*. at 206. Under this framework, the State can intervene before a mentally ill person decompensates and can provide a continuity of care. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 127, 498 P.3d 1006 (2021)

In a civil commitment proceeding, the petitioner has the burden of proving that the respondent is gravely disabled by clear, cogent, and convincing evidence. RCW 71.05.310. This standard means that the petitioner must show that the ultimate fact in issue is "highly probable." *Labelle*, 107 Wn.2d at 209. On appeal, we will not disturb the jury's grave disability verdict if it is supported by substantial evidence that the jury could reasonably have found to be clear, cogent, and convincing. *See id*. (addressing the standard of review for a bench trial). And for a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the petitioners. *See In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459 (2019).

B.     SUFFICIENT EVIDENCE UNDER RCW 71.05.020(25)(b)

CA argues that the evidence is insufficient to prove that he was gravely disabled. We disagree.

1.    Loss of Cognitive or Volitional Control

CA argues that the evidence was insufficient to establish that he manifested severe mental deterioration in routine functioning as evidenced by a loss of cognitive or volitional control. We disagree.

CA argues that he was doing well at the time of trial – he was medication compliant, cooperative, and oriented as to date and place. Therefore, he claims that the petitioners could not prove that a loss of cognitive or volitional control.

Rompogren testified that when CA first arrived at the hospital he presented with disorganized thoughts and delusional beliefs. Although he had improved with treatment, at the time of trial he still had a very specific delusion about being a firefighter on a ship and being absent without leave from the Navy. And he still had a delusion about being a trained assassin.

In addition, CA had a history of repeated loss of volitional control. There was evidence that when CA was released into the community without support, he almost immediately decompensated, committed crimes, and was readmitted. Rompogren stated, "When [CA] is not in treatment, based on the records, when he's in the community, his volitional control is impaired and he does become more agitated and prone to acting on aggressive impulses." RP at 201. As noted in *LaBelle*, involuntary commitment may be justified in this situation to prevent the "revolving door syndrome." 107 Wn.2d at 206.

There was evidence that CA became more agitated and prone to acting on his aggressive impulses when he was in the community and untreated for his mental health conditions and that this occurred several times after he was released from the hospital. This evidence provided sufficient evidence from which the jury could find by clear, cogent, and convincing evidence that

CA had manifested deterioration in functioning as evidenced by his repeated loss of volitional control.

    2.    Care Essential for Health or Safety

CA argues that the evidence was insufficient to establish that he would not receive the care essential for his health or safety. We disagree.

RCW 71.05.020(25)(b), requires that the petitioner establish a factual basis for concluding that an individual is not receiving and would not receive, if released, essential care for their health or safety. Proof of this element may include a showing that "the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *LaBelle*, 107 Wn.2d at 208 (emphasis omitted).

The petitioners presented evidence that CA repeatedly had decompensated when previously released into the community without support. They also presented evidence that although CA had told his treatment providers that he would continue his mediations if he were to be released, his treatment providers did not find this statement credible in light of his past decompensation and his inability to recognize his mental health condition or his need for medication. Both witnesses believed that if released, CA would not seek out, obtain, or maintain his medication or mental health treatment and that he would quickly decompensate. And that is what had happened several times in the past.

CA argues that his due process rights were violated because he was committed without any evidence that he was dangerous to himself or others. But the jury found that CA was gravely disabled under RCW 71.05.020(25)(b), which does not require a dangerousness finding. CA cites to *In re Detention of Hendrickson*, 140 Wn.2d 686, 694, 2 P.3d 473 (2000). However,

8

*Hendrickson* addressed involuntary civil commitments of sexually violent predators under chapter 71.09 RCW, not detentions under chapter 71.05 RCW.

The evidence was sufficient to allow the jury to find by clear, cogent, and convincing evidence that CA was at risk of not receiving essential care for his health if he were to be discharged.

We hold that CA's sufficiency of the evidence argument fails.

CONCLUSION

We affirm the trial court's involuntary commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
VELJACIC, J.