[No. 41260-4-I.   Division One.   October 26, 1998.]

*In the Matter of the Detention of* DONALD HENRICKSON.
DONALD HENRICKSON, *Appellant*, v. THE STATE OF
WASHINGTON, *Respondent*.

*Nancy Horgan* and *Christine A. Jackson* of *Seattle-King County Public Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donald J. Porter* and *David J.W. Hackett, Deputies*, for respondent.

BECKER, J. — Pending resolution of an appeal of his

conviction for a 1990 kidnapping, Donald Henrickson was allowed to remain in the community under the supervision of his wife and other chaperones while participating in a sex offender treatment program. After his conviction was affirmed, he served a prison sentence. He was then civilly committed as a sexual predator on a petition filed one day before his release from prison. Henrickson argues that the petition was constitutionally defective because it did not allege a recent overt act manifesting his continued dangerousness. We hold that due process does not require proof of a recent overt act by an alleged predator who has lived under conditions that do not provide an opportunity to reoffend. Here, Henrickson did not have an opportunity to reoffend while living in the community for more than three years after his last offense, because he was under constant personal supervision and subject to frequent reporting requirements. Thus, the trial court appropriately refused to dismiss the State's petition.

## FACTS

Donald Henrickson has a history of arrests for sexual misconduct with children dating back to 1973. He committed statutory rape with a five-year-old girl in 1986 and served three years in prison. One year after being released, Henrickson was again arrested, this time for luring a six-year-old girl to his apartment where he showed her pornographic material.

Henrickson was charged with attempted kidnapping and communicating with a minor for immoral purposes. He obtained release pending trial on condition that he participate in a sex offender treatment program which he entered in October 1990.

In June 1991, a jury found Henrickson guilty as charged. The trial court imposed an exceptional sentence of 120 months. Henrickson appealed. The trial court permitted Henrickson to remain free "on strict conditions" during the pendency of his appeal. He continued to participate in

the treatment program. This court affirmed the conviction, but reversed the exceptional sentence.

In December 1993, when the case went back for resentencing, Henrickson presented evidence of his successful involvement in treatment and strict compliance with the terms of his release. The court resentenced Henrickson to 50 months, near the bottom of the standard range.

Henrickson's date of release was August 30, 1996. On August 29, 1996, the State filed a petition requesting that Henrickson, upon his release, be committed as a sexually violent predator, as provided in RCW 71.09. Henrickson eventually stipulated to commitment, subject to appellate review of two issues: whether the trial court erred in (1) denying his motion to dismiss the State's petition for failure to allege a recent overt act, or (2) excluding the testimony of one of his expert witnesses.

## RECENT OVERT ACT

Under RCW 71.09.030, the State may file a sexually violent predator petition against a person who may be a sexually violent predator and who previously has been convicted of a sexually violent offense if the person "is about to be released from total confinement."[1] Such a person who "has since been released from total confinement," however, may not be the object of a petition for commitment unless the person has also committed "a recent overt act."[2] RCW 71.09.020(5) defines a recent overt act as "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm."

The statutory requirement of proving a recent overt act when the alleged predator has been released from confinement was added by amendment in 1995.[3] The amendment

[1]RCW 71.09.030(1).

[2]RCW 71.09.030(5).

[3]*See* LAWS OF 1995, ch. 216, § 3.

was made in response to *In re Personal Restraint of Young*,[4] in which the Supreme Court read the recent overt act requirement into the statute in order to make RCW 71.09.030 constitutional against a due process challenge.

The State filed its petition against Henrickson just before his release from prison. Under the literal terms of RCW 71.09.030, the State did not have to prove Henrickson had committed a recent overt act. Henrickson's argument is that the literal terms of the statute do not control the due process analysis that determines whether or not a recent overt act is a prerequisite to commitment. He contends that due process cannot be satisfied by the mere fact that the alleged predator was incarcerated on the day the State chose to file the petition. Instead, he argues, the court must inquire into the circumstances under which the alleged predator has been living since his last offense.

The foundational case for the recent overt act requirement in civil commitment is *In Re Harris*.[5] Harris appealed from an order of involuntary commitment under RCW 71.05.150(1)(a). That statute allows short-term detention for evaluation and treatment if a person, as a result of a mental disorder, presents "a likelihood of serious harm" to others or himself. The Supreme Court first agreed with Harris that there was a due process liberty interest involved in involuntary commitment proceedings.[6] The Court then reasoned that a showing of "dangerousness" can provide a basis for commitment strong enough to overcome the individual's liberty interest. The statute did not require that evidence of dangerous behavior be recent, but the court inferred that such evidence must be recent to be meaningful. Thus, interpreting RCW 71.05, the Court held that involuntary commitment was permitted only upon "a showing of a substantial risk of physical harm as evidenced by a recent overt act. This act may be one which

---

[4]*In re Personal Restraint of Young*, 122 Wn.2d 1, 41-42, 857 P.2d 989 (1993).

[5]*In re Harris*, 98 Wn.2d 276, 654 P.2d 109 (1982).

[6]*Id.* at 279.

has caused harm or creates a reasonable apprehension of dangerousness."[7]

Later, the Supreme Court in *Young* analogized the sexual predator statute at issue here to the commitment statute discussed in *Harris*, and established a similar requirement for proof of a recent overt act "when an individual has been released into the community."[8] The *Young* Court noted the difficulty posed by requiring proof that a person who had been living in the controlled environment of a prison had recently committed an overtly dangerous act. The Court held that proof of a recent overt act is not necessary to satisfy due process concerns "where the individual is currently incarcerated."[9]

The *Young* Court concluded the State was required to provide evidence of a recent overt act in the case of petitioner Cunningham, whose sexual predator petition was filed after he was released from prison when he had been free in the community for four and a half months.[10] But the Court did not require proof of a recent overt act in the case of petitioner Young, whose petition was filed one day prior to his date of release from prison for his most recent rape conviction.

Henrickson's petition, like Young's petition, was filed one day prior to his date of release for his most recent sex offense. The State argues that this circumstance is dispositive. The State contends *Young* creates a bright-line rule that "where the individual is currently incarcerated no evidence of a recent overt act is required."[11] Henrickson, however, contends his situation is analogous to that of Cunningham because of the three and a half years he remained

---

[7] *Id.* at 284-85.

[8] *Young*, 122 Wn.2d at 41.

[9] *Id.* (quoting *People v. Martin*, 107 Cal. App. 3d 714, 725, 165 Cal. Rptr. 773 (1980) ("Due process does not require that the absurd be done before a compelling state interest can be vindicated.")).

[10] *Young*, 122 Wn.2d at 42.

[11] *Id.* at 41.

in the community pending trial and appeal of his most recent conviction. He argues that he may not at this time be confined as a sexual predator because during his long period of time free of incarceration he did not engage in any behavior showing he is still a danger to others.

Two decisions of this court support Henrickson's argument that the *Harris-Young* requirement for a "recent overt act" allegation turns on the extent of the offender's opportunity to reoffend rather than the offender's incarceration status when the petition is filed. *In re Detention of Pugh*,[12] a case decided before *Young*, held that when considering whether an overt act is recent, it is appropriate to consider the time span since the act occurred in the context of "all the surrounding relevant circumstances." Pugh, who had been convicted of statutory rape and sentenced to prison in 1986, was about to be released in 1989 when the State successfully petitioned to have him involuntarily committed under RCW 71.05, as a danger to others. Relying on *Harris*, Pugh argued the court could not conclude that he posed a danger to others upon his release because there was no proof that he had committed an overt act more recent than those for which he was sentenced in 1986. But because Pugh had been institutionalized and isolated from children for five years, this court found the *Harris* requirement for a recent overt act to be inapplicable. "The absence of more recent overt acts during confinement is readily explainable as a lack of opportunity to offend rather than a demonstration of improvement so as to negate the showing that he presents a substantial risk of physical harm."[13]

This court reached the same conclusion in *In re Detention of P.S.*,[14] decided after *Young*. In *P.S.*, a mentally retarded petitioner had been confined in Eastern State

---

[12]*In re Detention of Pugh*, 68 Wn. App. 687, 695, 845 P.2d 1034, *review denied*, 122 Wn.2d 1018 (1993).

[13]*Id.* at 696.

[14]*In re Detention of P.S.*, 75 Wn. App. 571, 879 P.2d 294 (1994), *review denied*, 125 Wn.2d 1015 (1995).

Hospital for several years before the State initiated the civil commitment proceeding that gave rise to the appeal. Following *Pugh*, we held proof of a recent overt act was not required because "P.S. has been out of the community since 1989, and while he does spend time engaging in recreational activities with peers, this time is closely supervised. Moreover, the affidavits and testimony at his two most recent trials established that his condition has not changed such that he would no longer reoffend."[15]

Reading *Young, Pugh* and *P.S.* together with *Harris*, we conclude that the *Young* court did not create a bright-line rule. The fact that an individual is incarcerated on the day the petition is filed is not, by itself, dispositive. The more fundamental question is whether there is evidence of future dangerousness sufficient to overcome the individual's liberty interest. The requirement for proof of a recent overt act as evidence of dangerousness is excused where the individual has been living under a degree of restraint, such as confinement, that minimizes the opportunity to reoffend. If the individual has lived in the community since the most recent offense without committing a further overt act, the trial court should consider the degree to which the period of nonincarceration offered an opportunity to reoffend.

The trial court in this case appropriately considered the circumstances of Henrickson's life outside prison for the three-year period between his arrest and his prison term. The trial court's unchallenged findings of fact establish that Henrickson "was rigorously supervised on a 24 hour basis by his wife and other chaperones approved by his treatment providers."[16] And according to undisputed testimony, Henrickson was required to report to a corrections officer three times per week. Thus, although Henrickson was not in custody during that period, his status was closer to confinement than to the freedom enjoyed by petitioner Cunningham in *Young*.

---

[15]*Id*. at 577.

[16]Unchallenged findings of fact are treated as verities on appeal. *Sherwood v. Bellevue Dodge, Inc.*, 35 Wn. App. 741, 748, 669 P.2d 1258 (1983).

Because Henrickson was under constant strict supervision after his arrest for the 1990 kidnapping, due process did not require the State to prove a more recent overt act as a manifestation of his dangerousness. The trial court correctly refused to dismiss the State's petition.

## EXCLUSION OF DR. BERLIN

Henrickson also appeals the trial court's decision to exclude the testimony of Dr. Fred Berlin, an expert witness, as a sanction for Henrickson's failure to make the witness available for deposition.

Dr. Berlin was one of five similar witnesses who were prepared to testify that Henrickson, despite his pedophilia, could be safely managed in community-based treatment under court supervision. Dr. Berlin had particular expertise with respect to certain medication Henrickson would take to lower his pedophilic cravings.

Trial was set to begin August 18. According to a scheduling order, the parties were to complete depositions of witnesses by August 1. On July 23, the State filed a motion to exclude Dr. Berlin and all but one of the other defense witnesses as cumulative. The trial court denied the motion without prejudice, but ordered that Henrickson use his "best efforts" to arrange the deposition of Dr. Berlin. By agreement, Dr. Berlin's deposition was set for August 1.

On July 28, Henrickson advised the State that Dr. Berlin required a letter assuring that the State would pay his standard $450/hour fee for time spent in deposition. The State refused. Due to a conflict in Dr. Berlin's schedule, the parties reset the deposition for August 4. On August 1, the State heard from Henrickson that he expected the State to honor an alleged agreement to pay Dr. Berlin's requested deposition fee. The State again refused.

Henrickson then advised the State that Dr. Berlin would not be available on August 4 and that the deposition was cancelled. On August 5, the State filed a second motion to exclude the testimony of Dr. Berlin. Henrickson asked for a continuance. The trial court granted the State's motion

and denied the continuance. The court entered findings that the cancellation of the deposition prejudiced the State's ability to prepare for trial, that Henrickson was not prejudiced because he had other similar witnesses, and that there was no sanction less severe that would avoid prejudice to the State.

■■■■ Decisions to impose sanctions are reviewed for abuse of discretion.[17] It is important that sanctions not be used to impair the defendant's presentation of evidence when a liberty interest is at issue.[18] But a trial court may exclude testimony where there is a showing of intentional or tactical nondisclosure, willful violation of a court order, or other unconscionable conduct.[19]

Henrickson violated a court order when he unilaterally cancelled Dr. Berlin's scheduled deposition. Henrickson attempts to excuse this conduct by arguing that the State caused Dr. Berlin's nonappearance by refusing to assure payment of the requested fee. The argument is not persuasive. The State was not required to agree to a rate it deemed unreasonable. Under CR 26(b)(5)(C), the court has the ultimate responsibility for determining what fee is reasonable for time spent in discovery. If Dr. Berlin refused to be deposed unless the rate for his fee was settled in advance, it was incumbent upon Henrickson to bring the matter before the trial court for resolution prior to canceling the deposition. Under these circumstances, the trial court did not abuse its discretion in excluding the witness.

Affirmed.

AGID, A.C.J., and APPELWICK, J., concur.

---

[17]*Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338-39, 858 P.2d 1054 (1993).

[18]*See e.g. Baird v. Larson*, 59 Wn. App. 715, 719, 801 P.2d 247 (1990).

[19]*Miller v. Petersen*, 42 Wn. App. 822, 825, 714 P.2d 695, *review denied*, 106 Wn.2d 1006 (1986).