216 P.3d 1015 (2009)
In the Matter of the DETENTION OF Paul MOORE, Petitioner.
No. 81201-2.
Supreme Court of Washington, En Banc.
Argued May 21, 2009.
Decided October 1, 2009.
*1017 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Petitioner.
Sarah Sappington, Todd Richard Bowers, Attorney General's Office, Seattle, WA, for Respondent.
FAIRHURST, J.
¶ 1 Paul Moore was civilly committed as a sexually violent predator (SVP) under chapter 71.09 RCW. On review, he argues that the trial court erred in accepting his stipulation to certain facts without conducting an inquiry into Moore's competency, that trial counsel was constitutionally ineffective for agreeing to a stipulation, and that the State was required to prove Moore would reoffend within the foreseeable future to establish he is currently dangerous. We reject Moore's arguments and affirm.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior sexual and criminal history
¶ 2 In 1985, Moore entered a beauty salon carrying a knife and a brown paper bag. Moore ordered the two women in the salon, a worker and her customer, to a backroom. Moore raped the worker. Before leaving, he told the two women not to come out of the room or he would "`burn the place down.'" Clerk's Papers (CP) at 26, 36. When Moore was arrested for the offense, officers found a green bottle filled with gasoline in a paper bag.
¶ 3 Moore was charged with first degree rape with a deadly weapon and first degree robbery. After Moore's competency was questioned, he spent 13 months in Western State Hospital (WSH) until he was deemed competent to stand trial. He subsequently *1018 pleaded guilty to first degree rape with a deadly weapon and was sentenced to 75 months' confinement.
¶ 4 In 1990, while incarcerated at the Special Offender Center and serving his sentence for the 1985 rape, Moore rushed into his counselor's office without her permission. The counselor started to scream, but Moore told her to stop and pushed her into a wall, holding a weapon made of two pencils to her rib cage. Moore forced her to the corner of the office that was furthest from view of the outside hallway and told her to bend over. Moore pushed his crotch into the counselor's buttocks, and it was obvious to the counselor Moore had an erection. A nurse heard the counselor's muffled screams and called for help. A staff person arrived, pulled Moore away from the counselor, and restrained him.
¶ 5 Moore was charged with second degree attempted rape by forcible compulsion. He was again sent to WSH for a competency evaluation, and after being deemed competent to stand trial, Moore pleaded guilty to second degree attempted rape by forcible compulsion. He was sentenced to 50 1/2 months' confinement.
¶ 6 Since the 1990 attempted rape of the counselor until 2003, Moore was charged for committing several violent and sexual acts against prison staff. In 1991, he was charged with first degree custodial assault for hitting a female corrections officer on the head with a broom handle. Moore later told a psychiatrist he wanted to "`try to do something sexual to her.'" CP at 28, 38. Although WSH personnel determined Moore was competent, the trial court disagreed, and in the interests of justice, the prosecuting attorney dismissed the charges. In 1995, Moore was charged and convicted of custodial assault with sexual motivation when he ran up to a female corrections officer, grabbed her from behind, and held his arms around her chest. He then twisted the officer, thrusting his pelvis into her buttocks.[1]
¶ 7 In 2003, Moore grabbed his forensic therapist from behind, pressed his body against hers, and thrust his hips against her buttocks in a manner indicative of intercourse. Moore was charged with indecent liberties by forcible compulsion. Although Moore did not deny committing the acts as described, the trial court acquitted him of the charge.
¶ 8 In 2003, Moore was convicted of fourth degree assault when he charged a female staff member at the Special Commitment Center. When the staff member moved under a counter to protect herself, Moore repeatedly kicked her in the leg. Aside from these criminal acts, Moore has been found guilty of over 400 major infractions while in the custody of the Department of Corrections.

SVP proceedings
¶ 9 In May 2002, while Moore was incarcerated, the State filed a petition alleging Moore should be civilly committed as an SVP. The court conducted a competency hearing. At the hearing, Dr. Lee Gustafson testified that, having evaluated Moore's competency approximately four times in the preceding 10 years, Moore was legally incompetent on one or two of those occasions. When Moore was found incompetent to stand trial, he had not been on antipsychotic medication and his self-care
had deteriorated to the point where he was not bathing. There was feces in his hair. He was, in fact, drinking out of the urinal, and his skin was literally rotting off his body. Any efforts to engage him in any kind of conversation met with silence; he refused to talk.
Report of Proceedings (RP) (Sept. 20, 2002) at 5. Although Moore refused to speak to Dr. Gustafson before the competency hearing, Dr. Gustafson testified he had observed Moore immediately before the competency hearing and that Moore appeared cooperative and was talking to his attorney. When asked whether appointment of a guardian ad litem (GAL) would be in Moore's best interests, Dr. Gustafson opined that, when Moore was cooperating and talking with his attorney, a GAL would be unnecessary. If Moore was not cooperating and a decision needed to be made on a timely basis, a GAL would be useful. The trial court found Moore was *1019 competent to stand trial but appointed a standby GAL in the event Moore's trial counsel or the standby GAL felt Moore was unable to make his own decisions. During a recess after the ruling, Dr. Gustafson was allowed to interview Moore and supplement his testimony. After the interview, Dr. Gustafson did not change his recommendation. There is no indication the standby GAL was ever used.
¶ 10 A bench trial began in 2006. Pretrial, Moore's trial counsel filed motions in limine regarding 15 evidentiary issues. The State agreed to several issues and the trial court ruled on the remainder.
¶ 11 The State's expert, Dr. Richard Packard, was the first witness. Midway through his testimony, the parties entered a document entitled "Stipulated Facts and Exhibits" (stipulation) that included factual stipulations and stipulations to exhibits in lieu of witness testimony. Moore's trial counsel informed the court that Moore stipulated to the document but wanted to maintain a continuing objection to any evidence identified in the motion in limine. Following the entry of the stipulation, the State continued with its direct examination of Dr. Packard. Dr. Packard testified that, after interviewing Moore for several hours and reviewing Moore's file, he diagnosed Moore as having a psychotic disorder not otherwise specified, paraphilia not otherwise specified with a focus on "nonconsent where the sexual urges and behaviors are oriented towards having sexual contact with nonconsenting persons," and a personality disorder not otherwise specified that includes antisocial and passive aggressive features. RP (Mar. 7, 2006) at 89. Dr. Packard opined that Moore's paraphilia was "chronic and lifelong." Id. at 119. He testified that, after reviewing several actuarial models and his own clinical tests, he believed Moore would more likely than not commit another predatory sexual offense if he were released unconditionally.
¶ 12 Moore's expert, Dr. Theodore Donaldson, did not testify at trial, but his report was included in the stipulation. In his report, he explained he did not believe Moore should be diagnosed with sexual sadism or paraphilia. Dr. Donaldson wrote the reliability of the diagnosis of sexual sadism was unacceptably low. He wrote that paraphilic coercive disorder might describe paraphilic rape, but under this formulation, the "rapist prefers nonconsensual sex" over other forms of sex. Pet'r's Ex. 14, at 4. Although Dr. Donaldson did not believe Moore was a paraphilic rapist or had paraphilic coercive disorder, he opined,
Mr. Moore appears likely to commit a sex offense in the future. Given his history and his current mental status, it seems impossible to reach any other conclusion. He does not show any indications of marked improvements in his behavior, and I think that one can only assume his future behavior will probably be very much like his past behavior. The question will be whether he commits a nonsexual crime for which he is convicted before the opportunity for a sex offense occurs.
Pet'r's Ex. 14, at 11. Dr. Donaldson did not believe Moore was an SVP, but was more suitable for ordinary civil commitment.
¶ 13 The trial court found Moore to be an SVP, and he was civilly committed. In an unpublished per curiam opinion, the Court of Appeals, Division One, affirmed. In re Det. of Moore, noted at 141 Wash.App. 1026, 2007 WL 3347797. We granted review. In re Det. of Moore, 164 Wash.2d 1020, 195 P.3d 89 (2008).

II. ISSUES
A. Did the trial court deny Moore due process by accepting the stipulation without conducting any inquiry of Moore to see if he understood and knowingly waived his right to contest the State's case against him?
B. Was Moore's trial counsel constitutionally ineffective for agreeing to the stipulation and not advocating meaningfully for Moore?
C. Does due process require the State to prove that Moore will reoffend within the foreseeable future in order to establish Moore's current dangerousness?

III. ANALYSIS

A. Due process did not require the trial court to determine if Moore understood and knowingly waived his right to contest the State's case against him
¶ 14 Moore argues the trial court erred by accepting the stipulation without *1020 conducting an inquiry to determine if Moore understood and knowingly waived his right to contest the State's case against him. The Court of Appeals held that, even if SVP proceedings provided the same constitutional rights as criminal proceedings, due process does not require courts to ensure a respondent understands the rights waived by a factual stipulation. Moore, 141 Wash.App. 1026, 2007 WL 3347797, at *3. As the stipulation did not amount to an admission of guilt, the trial court was not required to inquire into Moore's understanding of the stipulation. We agree.
¶ 15 Even if this were a criminal case, due process would not require the trial court to ensure that a defendant understands the rights waived by a factual stipulation as long as the stipulation is not tantamount to a guilty plea. State v. Johnson, 104 Wash.2d 338, 705 P.2d 773 (1985); Adams v. Peterson, 968 F.2d 835, 842 (9th Cir.1992); see also State v. Woods, 143 Wash.2d 561, 608-09, 23 P.3d 1046 (2001) (holding that waiving admission of mitigating evidence in a capital case must be knowing, voluntary, and intelligent, but the waiver is presumed to be knowing, voluntary, and intelligent if part of trial strategy). A stipulation is typically an admission "that if the State's witnesses were called, they would testify in accordance with the summary presented by the prosecutor." State v. Wiley, 26 Wash.App. 422, 425, 613 P.2d 549 (1980). In such situations, the trial court would still need to determine guilt or innocence; the State must prove guilt beyond a reasonable doubt; and the defendant may offer evidence or cross-examine witnesses. Johnson, 104 Wash.2d at 342, 705 P.2d 773.
¶ 16 Even assuming the criminal constitutional standard applies to SVP civil commitment proceedings, there was no due process violation because the stipulation did not concede the State had met its burden of proof. While agreeing to the stipulation, trial counsel requested and received a continuing objection based on the pretrial motions. The stipulation also allowed for the admission of Dr. Donaldson's report, which opined Moore should not be committed as an SVP. Moore's trial counsel successfully objected to portions of the State's expert testimony, cross-examined the State's expert, and contested the sufficiency of the State's proof during closing argument. We hold the stipulation was not tantamount to an admission that Moore was an SVP.
¶ 17 Moore contends that his mental issues created a substantial risk of a deprivation of his rights and thus necessitated the trial court's inquiry. Assuming Moore's mental state was relevant to whether the stipulation required a voluntary, knowing, and intelligent waiver of rights, the record does not support Moore's argument. By the time of the stipulation, the trial court had found Moore to be competent to stand trial and appointed a standby GAL in the event Moore became incompetent. The standby GAL was not used. We find nothing in the record to show Moore was incompetent when the court accepted the stipulation.

B. Moore did not receive ineffective assistance of counsel when trial counsel agreed to the stipulation and advocated on Moore's behalf
¶ 18 Moore next argues he received constitutionally ineffective assistance of counsel because his trial counsel failed to properly advocate on Moore's behalf when counsel entered into the stipulation. The Court of Appeals held Moore had failed to prove his trial counsel was deficient or that he suffered prejudice. Moore, 141 Wash.App. 1026, 2007 WL 3347797, at *4. We agree.
¶ 19 To establish ineffective assistance of counsel, Moore must show deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. State v. Stenson, 132 Wash.2d 668, 705-06, 940 P.2d 1239 (1997). Prejudice occurs if, but for the deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and the defendant bears the burden *1021 of demonstrating the absence in the record of a strategic basis for the challenged conduct. Id. at 335-36, 899 P.2d 1251. A stipulation of facts may represent a tactical decision by counsel. State v. Mierz, 127 Wash.2d 460, 476, 901 P.2d 286 (1995).
¶ 20 Moore argues counsel was deficient when entering into the stipulation because it included admissions of guilt and had no particular benefit to Moore. Reviewing the record, we hold it does not support Moore's arguments. As the Court of Appeals stated,
the stipulation had the advantage of avoiding the emotional impact of live testimony from the witnesses in the 2005 indecent liberties proceedings. In addition, defense counsel used portions of Dr. Packard's stipulated reports to support her theory that Moore's prior acts were not motivated by a desire for nonconsensual sex. And because the stipulation required Dr. Packard to testify but not Dr. Donaldson, it allowed defense to cross-examine Dr. Packard about his report while shielding Dr. Donaldson from all questioning.
141 Wash.App. 1026, 2007 WL 3347797, at *4. Because there are strategic, tactical justifications for Moore's trial counsel's actions, the record does not demonstrate that counsel's performance was deficient.[2]
¶ 21 We hold that Moore has also failed to demonstrate he was prejudiced by the admission of the stipulation. Moore has presented no argument that the facts in the stipulation are not true, aside from the arguments presented by defense counsel at trial. To the extent Moore argues his trial counsel should have contested the validity of his prior convictions and admissions, an SVP defendant cannot attack the validity of a conviction that is constitutionally valid on its face. In re Det. of Young, 122 Wash.2d 1, 54-55, 857 P.2d 989 (1993). Also, Moore's trial counsel did not stipulate Moore was guilty of any prior charges that had not resulted in a conviction but argued that Moore's explanations of his conduct showed he had benign motives for his acts. Moore has not demonstrated he suffered prejudice. We hold Moore has failed to prove he received ineffective assistance of counsel.

C. Due process does not require the State to prove Moore will reoffend within the foreseeable future to establish Moore's current dangerousness
¶ 22 Finally, Moore argues the State must show current dangerousness for an incarcerated individual by refining its prediction of dangerousness to the foreseeable future. We do not think it is necessary to impose on the State the additional requirement of proving Moore is likely to reoffend within the foreseeable future.
¶ 23 In order to commit an individual, and thus significantly curtail his or her rights, due process requires the State to prove that the alleged SVP is mentally ill and currently dangerous. Id. at 27, 857 P.2d 989 (citing Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)); Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). We believe that, by properly finding all the statutory elements are satisfied to commit someone as an SVP, the fact finder impliedly finds that the SVP is currently dangerous. To understand why, it is important to lay out the relevant statutory provisions.
¶ 24 RCW 71.09.060(1) provides that, in order to commit someone as an SVP, the jury or judge must find beyond a reasonable doubt that the person is a sexually violent predator. Former RCW 71.09.020(16) (2003), recodified as RCW 71.09.020(18), defines the term "`[s]exually violent predator'" to mean, "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." "`Likely to engage in predatory acts of sexual violence if not confined in a *1022 secure facility'" is defined as "the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition. Such likelihood must be evidenced by a recent overt act if the person is not totally confined at the time the petition is filed under RCW 71.09.030." RCW 71.09.020(7).
¶ 25 While Moore may be correct that the "makes the person likely to engage" language in former RCW 71.09.020(16) and the "will engage" language in RCW 71.09.020(7) do not contain a specific temporal limitation, we believe that the "more probably than not" standard in RCW 71.09.020(7) includes a temporal component. For example, if an expert predicts that an alleged SVP will reoffend only in the far distant future, then there is less likelihood that the "more probable than not" standard has been legally satisfied. Whether that standard is satisfied depends on the facts underlying the SVP petition and the expert testimony.[3] It also may depend on the statistical likelihood of reoffending. By properly finding a person to be an SVP, it is implied that the person is currently dangerous. We do not deem it necessary to impose on the State the additional burden that it prove the SVP will reoffend in the foreseeable future.
¶ 26 In Moore's case, there was sufficient evidence for the court to find Moore more probably than not will engage in sexually violent acts if released unconditionally from detention on the SVP petition. The State's expert, Dr. Packard, testified that Moore's prior behavior and current diagnoses make it difficult for Moore to control his behavior. Dr. Packard testified Moore refuses to undergo treatment and has demonstrated no remorse for the sexual crimes he committed. Dr. Packard also explained that, while it was impossible to predict the future, he used several methods to assess whether it was likely Moore would reoffend if he were released. First, he used three actuarial models. The first model, the Static-99, examined the proportion of people who are reconvicted for a new sexual offense, using norm tables at 5, 10, and 15 years. Moore scored in the highest bin, which provided that 52 percent of the people in that bin were reconvicted of a new sexual offense within 15 years. The second model, the Minnesota Sex Offender Screening Tool Revised, examined whether released sex offenders were reconvicted within six years. Moore's score was in the highest risk bin, and 70 percent of the people in that bin were rearrested for a new sex offense within six years. The third test, the Sex Offender Risk Appraisal Guide and the Violence Risk Appraisal Guide, examined whether an offender would be returned to a secure facility for a new violent offense, including sexual, within 10 years. Moore scored in the second highest bin, and 89 percent of the people in that bin were returned to a secure facility within 10 years for a new violent offense.
¶ 27 Using a clinical test, Dr. Packard determined the risk was very high that Moore would reoffend. Dr. Packard testified that, looking at the actuarial instruments, the clinical tool, and reflecting on his own judgment and experience, it was more likely than not that Moore would commit another predatory sexual offense if he is released unconditionally.
¶ 28 Dr. Donaldson, Moore's own expert, agreed that it was more likely than not that Moore would commit a sexual offense in the future. Unlike Dr. Packard, Dr. Donaldson believed Moore was best suited for an ordinary civil commitment instead of an SVP commitment.
¶ 29 As evidenced by Moore's repeated instances of violent sexual offenses occurring both in and out of prison, Dr. Packard's testimony, and even Dr. Donaldson's opinion, there was sufficient evidence for the court to find Moore more probably than not would engage in sexually violent acts if released unconditionally from detention on the SVP petition. Because the evidence was sufficient for such a finding, the court impliedly found *1023 Moore was currently dangerous. We therefore reject Moore's due process challenge.

IV. CONCLUSION
¶ 30 We hold the trial court was not required to inquire whether Moore knowingly, voluntarily, and intelligently stipulated to facts at trial. We also hold Moore has not demonstrated his trial counsel was constitutionally ineffective. Finally, we hold the State was not required to show Moore would reoffend in the foreseeable future. The judgment of the trial court and decision of the Court of Appeals are affirmed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, OWENS, J. JOHNSON, and STEPHENS, JJ.
SANDERS, J. (dissenting).
¶ 31 The majority acknowledges the State must prove a person is mentally ill and currently dangerous as a result thereof to commit the person as a sexually violent predator (SVP). Majority at 1021. But the majority rejects Moore's argument "that the State was required to prove Moore would reoffend within the foreseeable future to establish he is currently dangerous," majority at 1017, 1021, and simply asserts, "[b]y properly finding a person to be an SVP, it is implied that the person is currently dangerous. We do not deem it necessary to impose on the State the additional burden that it prove the SVP will reoffend in the foreseeable future." Majority at 1022. I disagree.
¶ 32 "The State may ... confine a ... person if it shows `by clear and convincing evidence that the individual is mentally ill and dangerous.'" Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (quoting Jones v. United States, 463 U.S. 354, 362, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)). The State must establish an individual is mentally ill and the mental illness causes the individual to be currently dangerous. Foucha, 504 U.S. at 76, 112 S.Ct. 1780. "The dangerousness must be current." In re Det. of Albrecht, 147 Wash.2d 1, 7, 51 P.3d 73 (2002). "[C]urrent" is "occurring in or belonging to the present time: in evidence or in operation at the time actually elapsing." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 557 (2002). A person "may be held as long as he is both mentally ill and dangerous, but no longer." Foucha, 504 U.S. at 77, 112 S.Ct. 1780.
¶ 33 Moore argues due process requires the State to prove he is likely to reoffend within the reasonably foreseeable future to establish current dangerousness.
¶ 34 The Court of Appeals relied on In re Detention of Wright, 138 Wash.App. 582, 155 P.3d 945 (2007), which summarily relied on In re Personal Restraint of Young, 122 Wash.2d 1, 59, 857 P.2d 989 (1993), and held "Moore contends due process requires the State to prove that an incarcerated SVP candidate is likely to reoffend within the reasonably foreseeable future. This argument is controlled by our decision in In re Detention of Wright, 138 Wash.App. 582, 155 P.3d 945 (2007)." In re Det. of Moore, noted at 141 Wash.App. 1026, 2007 WL 3347797, at *5.
¶ 35 In Young, Young contended the State "should have to prove he was likely to commit another offense within a set time frame," but the court rejected this argument without directly addressing it, simply asserting it lacked merit without explanation. Wright, 138 Wash.App. at 585, 155 P.3d 945; Young, 122 Wash.2d at 59, 857 P.2d 989. However Young did not say the constitutional requirement to prove current dangerousness disappears.
¶ 36 In contrast a different Division One opinion persuasively reasoned, "the fact that an individual is incarcerated on the day the petition is filed is not, by itself, dispositive. The more fundamental question is whether there is evidence of future dangerousness sufficient to overcome the individual's liberty interest." In re Det. of Henrickson, 92 Wash.App. 856, 863, 965 P.2d 1126 (1998), aff'd, 140 Wash.2d 686, 2 P.3d 473 (2000). The State moved for discretionary review by this court disputing the reasoning of the Court of Appeals decision. Id. at 690, 2 P.3d 473. However, this court did not address the Court of Appeals' reasoning but held, "when, at the time the petition is filed, an individual is incarcerated for a sexually violent offense, *1024 or for an act that itself would have constituted a recent overt act, due process does not require the State to prove a further overt act occurred between arrest and release from incarceration." Id. at 697, 2 P.3d 473. We did not say proving current dangerousness is not an essential element of constitutionally required proof.
¶ 37 There also must be a causal connection between an individual's diagnosed mental abnormality and his conduct which reflects "the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment `from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.'" Kansas v. Crane, 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (quoting Kansas v. Hendricks, 521 U.S. 346, 360, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Moore's expert argued Moore was mentally ill, but his illness did not cause him to commit sexually violent crimes, thus not making him currently dangerous as a result of a mental disorder. Moore contended his actions were motivated by reasons other than paraphilia, asserting he wanted to have sex for the sake of having sex and not because he enjoyed forcing others to do so. The State argued Moore was mentally ill because he suffered from paraphilia involving nonconsenting sex, and Moore's mental illness caused him to be currently dangerous because of his propensity to engage in nonconsenting sex. However the State never presented evidence Moore is currently dangerous.
¶ 38 Since current dangerousness is the only constitutional basis for civilly committing anyone, the majority is incorrect to assert it is not "necessary to impose on the State the additional burden that it prove the SVP will not reoffend in the foreseeable future." Majority at 1022. While it may be inappropriate to require evidence of a recent over act if the individual has been incarcerated since his last violent sex crime, there still must be proof in the State's case in chief that the person is presently dangerous as a result of a mental disorder to satisfy constitutional standards.
¶ 39 I do not agree with the majority's holding that "there was sufficient evidence for the court to find Moore more probably than not would engage in sexually violent acts if released unconditionally from detention on the SVP petition. Because the evidence was sufficient for such a finding, the court impliedly found Moore was currently dangerous." Majority at 1022-23. The problem is that under these instructions the State is not required to prove Moore will reoffend in the near future to establish he is currently dangerous, only that he is likely to reoffend sometime in his life. This is not proof of current dangerousness.
¶ 40 Accordingly, I dissent.
NOTES
[1] In 1993, Moore was also convicted for writing threats to the governor of Washington and the president of the United States.
[2] We also hold Moore's argument that trial counsel was ineffective for not providing an opening statement or only providing a closing statement that lasted for seven pages of transcript is meritless. Throughout the entire proceedings, trial counsel argued that the evidence was insufficient to support the elements of an SVP commitment.
[3] Further, to ensure that the SVP's dangerousness remains current, RCW 71.09.070 requires the State to conduct annual evaluations to consider whether the SVP currently satisfies the definition of an "SVP" and whether a least restrictive alternative might be more appropriate at that point.