IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Detention of: | ) | No. 30639-9-III |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| STANFORD ANDERSON. | ) | |

KULIK, J. — Stanford Anderson appeals the trial court's order civilly committing him as a sexually violent predator (SVP) under chapter 71.09 RCW. He contends the State did not prove beyond a reasonable doubt that he would likely engage in predatory acts of sexual violence unless confined to a secure facility. We conclude that the State presented sufficient evidence for the jury to decide beyond a reasonable doubt that Mr. Anderson is an SVP. Accordingly, we affirm.

FACTS

Stanford Anderson, born October 27, 1953, has a long history of sexually assaulting minor males. In the mid-1980s, he sexually assaulted his 10- or 11-year-old nephew, but was not prosecuted for the offense. In 1984, he pleaded guilty to indecent liberties involving his girl friend's 9-year-old son. While he was on parole for that offense, he had four violations of his community supervision conditions for unsupervised

contact with males under the age of 16 and for sexually touching two males under the age of 16.

In 1986, Mr. Anderson assaulted the 13-year-old son of a woman he was dating. Mr. Anderson gave the boy marijuana and had him perform oral sex on Mr. Anderson. Mr. Anderson later entered a guilty plea to communicating with a minor for immoral purposes. In 1991, he was convicted for the crime of third degree child molestation of a 14 year old. After release from custody on that offense, he was convicted in 1997 of a sexually motivated fourth degree assault against a 23-year-old male.

In 2003, Mr. Anderson made sexual remarks to a 14-year-old male while they were working together and touched the boy's genitals. Mr. Anderson was not charged with a criminal offense because the victim did not tell anyone about the incident at the time. One year later, Mr. Anderson was convicted of third degree rape of a 16 year old. Mr. Anderson admitted to having sexual intercourse with the minor, but believed the relationship was consensual. Mr. Anderson was convicted of 5 sex offenses over a 20-year period.

Mr. Anderson participated in a sex offender treatment program (SOTP) in prison between August 2006 and August 2007. His therapist reported that Mr. Anderson made "minimal progress," noting that, "[h]e struggles with sexual preoccupation. He is

sexually aroused to male minors to include young looking offenders. . . . He sexually acted out his thoughts resulting in his termination for the second time from SOTP." Ex. 22 at 789. At trial, his therapist testified that Mr. Anderson received multiple infractions for sexually inappropriate behavior and "invasiveness" with other inmates, and that he has "difficulty differentiating between friendship and sexual advances." Ex. 22 at 802; Report of Proceedings (RP) at 332. Ultimately, he was terminated from treatment for failure to progress and "abide by the rules." RP at 333.

Shortly before Mr. Anderson was due to be released from custody in 2009, the State petitioned to have Mr. Anderson committed as an SVP under chapter 71.09 RCW. The court remanded Mr. Anderson to the custody of the Special Commitment Center (SCC) at McNeil Island during pendency of the case and ordered him to submit to interviews and testing.

At trial, the State's expert, Dr. Christopher North, a psychologist who specializes in assessing sexually violent predators, testified that he interviewed Mr. Anderson in 2007 and 2011. He diagnosed Mr. Anderson with pedophilia and paraphilia, not otherwise specified, explaining that Mr. Anderson's primary sexual attraction was to boys between the ages of 9 and 14.

In assessing Mr. Anderson, Dr. North used three actuarial tests: the Static-99R; the Static-2002R; and the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R). Mr. Anderson had a score of 7 on the Static-99R, which correlated with a recidivism rate of 38 to 49 percent within 10 years of release. On the Static-2002R test, Mr. Anderson obtained a score of 8, which correlated with a 46 percent chance of recidivism within 10 years. Finally, Mr. Anderson's score of 8 on the MnSOST-R was correlated with a recidivism rate of 30 percent within 6 years. Dr. North explained that these scores represent a high risk to reoffend relative to other offenders.

In addition to the test scores, Dr. North discussed Mr. Anderson's long history of sexual offenses against both prepubescent and pubescent boys. He also pointed out that while incarcerated, Mr. Anderson had been "infracted [for targeting] younger looking and vulnerable and weaker inmates, again, I think, because they are the closest thing available to his preferred age, which is right around the age of puberty." RP at 383.

When asked whether Mr. Anderson currently suffers from paraphilia, Dr. North answered, "we know that these fantasies, urges and behaviors began around the time that he was a teenager, and they continued up through we know at least through 2007 when he was in sex offender treatment and was admitting to them." RP at 388. He testified, "the evidence from the sex offender treatment program is that he is still actively attracted to

4

prepubescent and to pubescent boys" and that he continued to seek out more vulnerable and young-looking individuals in prison. RP at 443.

Dr. North concluded that Mr. Anderson was likely to commit a predatory sexual offense if released from confinement. At the close of his testimony, he explained:

> [D]ue to [Mr. Anderson's] ongoing sexual attraction to prepubescent and pubescent children, his very high sex drive, his tendency to try to meet his sexual and emotional needs through sexual activity, his loneliness, all of those, I think, combine to create a portrait of a very unhappy, unfortunate individual who is sexually deviant and who is, I think, at high risk for re offense [sic].

RP at 448.

The jury found that Mr. Anderson is an SVP. The trial court entered an order of civil commitment. Mr. Anderson appeals.

## ANALYSIS

Although SVP commitment proceedings are civil in nature, the criminal standard of review applies to sufficiency of the evidence challenges to the SVP statute. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). The evidence is sufficient if, when viewed in the light most favorable to the State, a rational trier of fact could find each essential element beyond a reasonable doubt. *Id.* As in criminal cases, we defer "to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970

(2004).

A court may civilly commit a person to a secure facility if it determines beyond a reasonable doubt that he is an SVP. RCW 71.09.060(1). To commit a person as an SVP, the State must prove that the individual (1) has been convicted of or charged with a crime of sexual violence; (2) suffers from a mental abnormality or personality disorder; and (3) is more likely than not, because of the disorder, to engage in predatory acts of sexual violence if not committed to a secure treatment facility. RCW 71.09.020(18). Civil commitment only satisfies due process if the State proves an individual is "mentally ill and currently dangerous." *In re Det. of Moore*, 167 Wn.2d 113, 124, 216 P.3d 1015 (2009).

Mr. Anderson argues that the State presented insufficient evidence to prove that he is likely to commit predatory acts of sexual violence if released. Specifically, he challenges the State's reliance on actuarial tests, contending they "did not constitute evidence of what current risk Mr. Anderson was for re-offense. Rather, they only provided an assignment of risk many years into the future." Appellant's Br. at 15. He also argues that because his scores on the actuarial tests did not exceed 50 percent, they did not indicate a sufficient likelihood that he would reoffend. He argues, "a 38% to 49% statistical probability does not constitute proof beyond a reasonable doubt." Appellant's

Br. at 17.

Mr. Anderson's argument is unpersuasive. The actuarial data was merely one component relied on by the State's expert. Dr. North explained that actuarial data is only a "beginning point to assess an offender's risk," and that Mr. Anderson's scores represented a "conservative estimate." RP at 400, 413. He testified that actuarial estimates are considered significant underestimates of risk because their data does not include undetected or unreported offenses. For example, Dr. North explained that the Static-99R includes data about charges or convictions, but does not take into account crimes where the perpetrator was never found.

Dr. North explained that because of the limited predictive value of actuarial instruments, he evaluated other information to determine Mr. Anderson's risk of recidivism. Thus, he also interviewed Mr. Anderson and reviewed his criminal history, prison records, and records from treatment providers. Dr. North found it significant that while in sexual offender treatment, Mr. Anderson revealed ongoing sexual fantasies about prepubescent and pubescent males, had attempted to molest young men while incarcerated, and admitted in an interview with Dr. North, "'I'm sick. I need help. I'm tired of doing this, and I don't want to create further victims.'" RP at 384.

Additionally, Dr. North explained that he also looked at other research-based descriptors related to a sex offender's risk of recidivism. He stated that to get a comprehensive picture of Mr. Anderson's risk of reoffending, he looked to "dynamic risk factors" that are correlated to recidivism. RP at 425. Dr. North stated these factors included Mr. Anderson's "sexual preoccupation" and ongoing harassment of inmates in prison, and his inability to experience emotionally intimate relationships with adults. RP at 426. He also noted the lack of "protective" factors, which would have lowered Mr. Anderson's risk to reoffend. RP at 433. These included the lack of physical or medical problems that would limit Mr. Anderson's ability to commit future offenses, and Mr. Anderson's inability to be in the community for at least five years without reoffending.

Finally, Dr. North also testified that Mr. Anderson's release plans increased his risk to reoffend:

> He doesn't really have anybody that can help him out. He's going out into a community where he will know no one. We know that he struggles often with feeling lonely and depressed, and when he gets lonely and depressed he's even more likely to seek out a victim or someone he can have sex with to try to help him feel better.

RP at 446.

Dr. North based his opinion on numerous factors and variables. Because Dr. North's expert opinion was not exclusively based on the results of the actuarial

assessments, Mr. Anderson's argument—that the actuarial tests did not constitute evidence of his current risk of reoffending and that the results of the tests demonstrated a percentage risk that did not amount to beyond a reasonable doubt—is unpersuasive.

Viewing all of the evidence in a light most favorable to the State, including Mr. Anderson's long history of sexually assaulting minor males, the jury could have found, beyond a reasonable doubt, that Mr. Anderson was likely to commit sexually violent crimes if not confined.

The State presented sufficient evidence for the finder of fact to determine beyond a reasonable doubt that Mr. Anderson met the definition of an SVP.

We affirm the trial court's order of commitment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Kulik, J.

WE CONCUR:

Korsmo, C.J.

Fearing, J.

9