IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31377-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARMANDO CORTEZ LOPEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Armando Cortez Lopez appeals his attempted indecent liberties conviction. For the first time on appeal, he contends a lay witness improperly commented on his guilt and the State committed misconduct in exploiting that comment and misstating evidence. Additionally, Mr. Lopez contends his trial attorney provided ineffective assistance by not objecting to the witness comment and to the State's alleged misconduct. We reject his contentions and affirm.

FACTS

The State charged Mr. Lopez with attempted second degree rape or, in the alternative, attempted indecent liberties based on events occurring in March 2012 in Yakima County.

While stopped in his car at a Sunnyside intersection on a Sunday morning, Cody Case saw a man identified as Mr. Lopez approach and pass an alley in which Ms. G was walking. According to Mr. Case's trial testimony, Mr. Lopez saw Ms. G, backed up and pulled his sweatshirt's hood tight around his face concealing it, and proceeded briskly down the alley. Mr. Lopez passed by Ms. G, then backed up and pushed her against a dumpster. Mr. Lopez grabbed at Ms. G's waist and pulled her pants down about four inches. Mr. Case then drove through the red light and down the alley, causing Mr. Lopez to flee on foot. Mr. Case followed Mr. Lopez to his truck. Mr. Case pulled in behind him. Mr. Lopez got out of his vehicle and was "mess[ing] with his crotch . . . like he was zipping it up." Report of Proceedings (RP) at 53. Mr. Case elaborated that Mr. Lopez might have been trying to pull up his pants. Mr. Lopez returned to his vehicle and drove off. Mr. Case followed, following Mr. Lopez to where he parked his truck and called the police. Police recovered Mr. Lopez's truck leading to his arrest after witness identifications.

Ms. G testified using an interpreter. She related Mr. Lopez may have been trying to pull down her pants when he grabbed at her buttocks. "If my pants went down, it was just a little bit like this, but, I mean, my pants didn't go down." RP at 78. Ms. G believed Mr. Lopez pulled at her jacket over her pants. Police witnesses generally related Ms. G seemed embarrassed by the events and had earlier shown the extent that her pants had been pulled down.

2

During trial, the prosecutor asked Mr. Case, "How close were they when he grabbed her and pulled down his pants?" RP at 48. There was no objection to use of the word "his" pants instead of "her" pants. RP at 48. During cross-examination, defense counsel asked Mr. Case how long the encounter took and Mr. Case replied, without objection, "Three minutes; long enough for me to come from a stop sign . . . . I sat there and waited for a minute, hesitated. It's not often you see someone, you know, trying to molest someone." RP at 65. On re-direct, the prosecutor asked, "You said it's not often you see someone molesting someone. Why did you say that?" RP at 69. Mr. Case replied, "You just don't Sunday morning, any morning, see some guy grabbing an older lady and pushing up against a dumpster and try to pull her pants down." *Id.*

During closing remarks, the prosecutor argued, without objection, "The fact of him pulling down his pants is significant to distinguish this between attempted rape and attempted indecent liberties." RP at 165. The prosecutor argued, "It's not often you see someone molesting someone, which is what we heard Cody Case say yesterday in his testimony." RP at 156. The prosecutor later repeated, "It's not often you see someone being molested. That's what Cody saw." RP at 163. During rebuttal the prosecutor remarked, "Cody, he testified about this yesterday. It's not every day you – it's not often you see someone molesting someone." RP at 172. Defense counsel did not object.

The court instructed the jury, "You are the sole judges of the credibility of each witness. . . . [T]he sole judges of the value or weight to be given to the testimony of each witness." Clerk's Papers (CP) at 113 (Jury Instruction No. 1). Further, the court

3

instructed, "You must disregard any remark, statement, or argument that is not supported by the evidence." *Id.*

The jury found Mr. Lopez not guilty of attempted second degree rape, but guilty of attempted indecent liberties. Mr. Lopez appeals.

## ANALYSIS

### A. Witness Testimony

The issue is whether Mr. Case's testimony regarding molestation was an improper comment on Mr. Lopez' guilt thereby warranting reversal of his conviction. Since no objection was made below to the challenged statement, we must first address whether this issue may be raised for the first time on appeal.

In cross examination, Mr. Lopez's defense attorney asked Mr. Case how long the encounter he observed took place and was curious about Mr. Case's reaction time. Mr. Case replied, "Three minutes, long enough for me to come from a stop sign . . . . I sat there and waited for a minute, hesitated. It's not often you see someone, you know, trying to molest someone." RP at 65. The import of the answer was to explain Mr. Case's reaction time to the observed startling event. Typically, an examiner may object to the responsiveness of answers to questions asked. Here, Mr. Lopez's trial attorney chose not to object to Mr. Case's response. Mr. Lopez's appellate counsel raises this issue for the first time on appeal.

We may refuse to review any claimed error not raised in the trial court. RAP 2.5(a). Nevertheless, a defendant may challenge a claimed error for the first time on

4

appeal if he or she can show it was a manifest constitutional error affecting his or her constitutional right to a jury trial. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). But "[a]dmission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. To merit appellate review in these circumstances, a defendant must show the alleged error caused "actual prejudice" or "practical and identifiable consequences" in his trial. *Id.* at 935. For non-preserved allegedly improper opinion evidence to qualify under the RAP 2.5(a)(3) exception, "'[m]anifest error' requires a *nearly explicit* statement by the witness that [he] believed the accusing victim'" or disbelieved another key witness. *Kirkman*, 159 Wn.2d at 936 (emphasis added).

Mr. Case's challenged statement was not a direct comment about Mr. Lopez' individual guilt or credibility; rather, Mr. Case testified to the actions that caused him to continue to observe Mr. Lopez and his response time. Viewing the questioning in this context, it appears the term "molest" was used in a broad sense to describe Mr. Lopez' actions. In general, "molest" is a synonym for the term "annoy" and may mean "to annoy, disturb, or persecute [especially] with hostile intent or injurious effect." *Merriam Webster's Collegiate Dictionary* 749 (10th ed.1997). Thus, Mr. Case's testimony was not a statement about Mr. Lopez' guilt or credibility or an ultimate fact. No proof of molestation was required for conviction in this attempt crime. The statement, therefore,

5

did not constitute improper opinion testimony rising to the level of a constitutional error that Mr. Lopez can raise for the first time on appeal.

Because Mr. Lopez fails to show constitutional error, we do not reach the "manifest" issue, i.e., whether it was prejudicial or had "practical and identifiable" results in the trial below. *See* RAP 2.5(a)(3); *State v. Bertrand*, 165 Wn. App. 393, 400 n.8, 267 P.3d 511 (2011) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn. App. 191, 99, 217 P.3d 756 (2009)). Nevertheless, we again note prejudice would be difficult to prove since the State did not charge Mr. Lopez with molestation and molestation is not a specific element of attempted indecent liberties. *See* RCW 9A.44.100(1)(a) (To convict Mr. Lopez of attempted indecent liberties, the State had to prove that he knowingly took a substantial step to cause another person to have sexual contact by forcible compulsion). Thus, it is unlikely that use of the word "molest" led to Mr. Lopez' attempted indecent liberties conviction.

Under analogous circumstances, the Washington Supreme Court has concluded no prejudice existed where, despite allegedly improper opinion testimony on witness credibility, the trial court had properly instructed the jury that jurors "'are the sole judges of the credibility of the witnesses and of what weight is to be given to the testimony of each'" and that jurors "'are not bound'" by expert witness opinions. *Kirkman*, 159 Wn.2d at 937 (citations omitted). The trial court here gave similar instructions that we presume the jury followed. *Kirkman*, 159 Wn.2d at 937. Thus, even if Mr. Case's statement had been unconstitutional, and therefore improper opinion about Mr. Lopez' guilt or

6

credibility, Mr. Lopez fails to show actual prejudice or practical and identifiable

consequences to the trial results justifying an exception to RAP 2.5(a)'s preservation

requirement that the alleged error be "'manifest.'" *Bertrand*, 165 Wn. App. at 400.

Given all, we conclude Mr. Lopez fails to show Mr. Case's responsive testimony was a

manifest constitutional error that may be raised for the first time on appeal under RAP

2.5(a)(3).

## B. Prosecutorial Misconduct

The issue is whether prosecutorial misconduct deprived Mr. Lopez of a fair trial.

First, Mr. Lopez contends the prosecutor committed misconduct by suggesting

during interrogation and in argument that Mr. Lopez pulled his pants down when

approaching Ms. G. Mr. Lopez did not raise any objection at the trial court to the form of

the State's question that assumed a fact not in evidence (that Mr. Lopez pulled his

pants down when approaching Ms. G) or the State's argument asserting Mr. Lopez

pulled down his pants.

To prevail on a prosecutorial misconduct claim, a defendant must show that the

prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d

438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial

likelihood that the misconduct affected the verdict. *Id.* at 442-43. A defendant who fails

to object to the prosecutor's improper act at trial waives any error, unless the act was so

flagrant and ill intentioned that an instruction could not have cured the resulting

prejudice. *Id.* at 443. The focus of this inquiry is more on whether the resulting

7

prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

A high burden is imposed when a defendant fails to object to alleged prosecutorial misconduct. Mr. Lopez does not meet this burden. Mr. Case testified he observed Mr. Lopez "mess[ing] with his crotch . . . like he was zipping it up." RP at 53. But later, the prosecutor asked Mr. Case, "How close were they when he grabbed her and pulled down his pants?" RP at 48. There was no objection to use of the word "his" pants instead of "her" pants. The prosecutor appears to have misstated the question. During closing remarks, the prosecutor stated, without objection, "The fact of him pulling down his pants is significant to distinguish this between attempted rape and attempted indecent liberties." RP at 165.

This blurring of the factual record, by mixing testimony showing Mr. Lopez pulled Ms. G's pants down and Mr. Lopez messed with his pants and crotch, was not so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. The challenged evidence and argument bore on the attempted second degree rape charge, which requires an attempt to engage "in sexual intercourse with another . . . [b]y forcible compulsion." RCW 9A.44.050(1)(a). Attempted indecent liberties does not require an attempt at sexual intercourse. The jury acquitted Mr. Lopez of attempted second degree rape; thus, Mr. Lopez cannot show testimony or argument that he pulled down his pants prejudiced him. His prosecutorial misconduct claim, therefore, fails.

8

Second, Mr. Lopez, contends the State committed misconduct by repeating Mr. Case's molestation comment. Based on our analysis that the testimony was not improper, Mr. Lopez' claim is without merit. He additionally argues the State had a duty to prepare its witnesses not to offer improper testimony. *See State v. Montgomery*, 163 Wn.2d 577, 592, 183 P.3d 267 (2008) (prosecutors have a duty to prepare witnesses for trial). This improper preparation argument fails for the same reason.

## C. Assistance of Counsel

The issue is whether Mr. Lopez was denied effective assistance of counsel. He contends counsel was deficient for failing to object to Mr. Case's molestation testimony and to the prosecutor's comments on that testimony during closing argument.

The Sixth Amendment of the United States Constitution guarantees defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate ineffective assistance, an appellant must show the attorney's performance was deficient and that the deficiency was prejudicial. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance falls below an objective standard of reasonableness. *In re Det. of Moore*, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). Prejudice occurs if, but for the deficient performance, the outcome of the proceedings would have been different by a reasonable probability. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We must strongly presume effective assistance. *Moore*, 167 Wn.2d at 122. But, we will conclude counsel's representation is ineffective if we can find no

9

legitimate strategic or tactical reason for a particular decision. *McFarland*, 127 Wn.2d at 335.

As previously analyzed, Mr. Case's response, "It's not often you see someone, you know, trying to molest someone" was not improper opinion testimony; rather, it was a description of the events that caught Mr. Case's attention and a response to an inquiry about Mr. Case's reaction time. RP at 65. Therefore, failure to object to the testimony or the prosecutor's remarks did not fall below an objective standard of reasonableness. *Moore*, 167 Wn.2d at 122. Even assuming counsel's performance was deficient, Mr. Lopez cannot show prejudice. Eye-witness testimony apparently believed by the jury showed Mr. Lopez put on and pulled tight his sweatshirt hood to conceal his face, followed and grabbed Ms. G in an alley, and partly pulled her pants down. Mr. Lopez then fled when Mr. Case pursued. Soon after, Mr. Lopez was seen adjusting the crotch-area of his pants and appeared to be zipping up his zipper. It is unlikely an objection to the "molest" answer would have resulted in a "not guilty" verdict. We note counsel was effective in getting an acquittal on the more serious offense of attempted second degree rape. Given all, we conclude Mr. Lopez has not overcome the strong presumption of effective assistance of counsel.

### D. Cumulative Error

Mr. Lopez contends he is entitled to relief under the cumulative error doctrine because the combined effect of his claimed errors denied him a fair trial. Cumulative error may justify reversal, even when each individual error would otherwise be

10

considered harmless; but the doctrine does not apply where there are few errors or the errors have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Mr. Lopez fails to establish a single reversible error, let alone a combination of errors that denied him a fair trial. Thus, his claim of cumulative error fails.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

11